(Nos. 14021-14022.—Judgment affirmed.)
GORDON A. RAMSAY, Appellant, *vs.* GREGORY T. VAN-
METER, Appellee.

*Opinion filed October 22, 1921—Rehearing denied Dec. 20, 1921.*

1. APPEALS AND ERRORS—*direct appeal may be taken to determine validity of appointment of public administrator.* Where the validity of the act of the Governor in removing a public administrator and appointing a successor is raised in the probate court by objections to the approval of the appointee's bond and to his appointment as administrator in the particular estate before the court, appeals from the orders of the court approving the bond and granting letters of administration may be taken directly to the Supreme Court.

2. OFFICES—*sections 10 and 12 of article 5 of constitution refer only to State offices.* Sections 10 and 12 of article 5 of the constitution, giving the Governor power to appoint and remove certain officers, refer only to offices under the State government as distinguished from county, city, township or other municipal offices.

3. SAME—*distinction between State and county officers.* A State officer, generally speaking, is one whose duties and powers are co-extensive with the State while a county officer is one whose duties and powers are co-extensive with the county, but the question does not depend upon the extent of the territory in which the official duties must be performed nor upon the extent of the territory in which such duties are binding.

4. SAME—*who are State officers.* All officers whose duties concern the State at large, or the general public, are State officers, although such duties are exercised within defined territorial limits.

5. SAME—*what is an "office" within meaning of term as defined in constitution.* An office, to be included within the definition in section 24 of article 5 of the constitution, must be a permanent public position created by law, with continuing duties; and such question is not determined by the method of filling the position,— whether by appointment or election,—but if the duties are continuing, the position, if public, is an office, within the meaning of said definition, whether the incumbent is appointed during the pleasure of the appointing power or elected for a fixed term, regardless of whether the position carries a salary or fees.

6. SAME—*Governor has power of appointment and removal of all public officers not otherwise selected.* Under sections 10 and 12 of article 5 of the constitution the Governor has authority to appoint and remove any State officer whose appointment or selec-

tion is not otherwise provided for, but he has no such power, under the constitution, where the position is that of a mere employee or trustee or other agent who is not an officer as defined in the constitution.

7. ADMINISTRATION—*court must grant letters to public administrator under sections 18 and 46 of Administration act.* Where the public administrator is required to act under sections 18 and 46 of the Administration act the grant of letters of administration to such officer is *virtute officii,* and the court has no discretion to grant the letters to anyone else.

8. SAME—*public administrator is an officer within meaning of the constitution.* The public administrator is an officer within the meaning of sections 10 and 12 of article 5 of the constitution, giving the Governor power to appoint and remove certain officers, as the duty of administering estates that cannot be administered by the ordinary administrator, by the election of the widow or the heirs or creditors, concerns the State at large or the general public.

9. SAME—*right to pass property by inheritance or by will is a statutory right.* The right to demand that property pass by inheritance or will to heirs or devisees is not an inherent or natural right but is purely a statutory right, and the legislature can make any provision for the distribution of an intestate's property that it may see fit.

10. SAME—*ordinary administrator is not a public officer.* The ordinary administrator of an estate is not an officer within the legal definition of that term but is a mere trustee acting in a private capacity for the heirs and the creditors of the intestate, and the State in all ordinary administrations has waived its right to administer such estates by any public officer and has delegated full authority to control the administration thereof to the heirs, the widow and the creditors.

11. SAME—*effect upon pending estates of removal of a public administrator.* Where the term of office of a public administrator expires or he is removed from office his powers as such officer cease when his successor qualifies, and he has no further duties to perform except to complete the administration of estates theretofore begun by him, in which he continues in the capacity of an ordinary administrator.

APPEAL from the Probate Court of Cook county; the Hon. HENRY HORNER, Judge, presiding.

CHARLES S. CUTTING, and JAMES H. WILKERSON, (EDGAR A. BANCROFT, JOSEPH KEIG, ARTHUR R. HALL, and KENNETH B. HAWKINS, of counsel,) for appellant.

EDWARD P. VAIL, and DONALD P. VAIL, (DAN J. SCHUYLER, and CHARLES WEINFELD, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Gregory T. VanMeter, appellee, presented his commission to the probate court of Cook county with his bond as public administrator of Cook county in the sum of $200,000 and made application to the court for approval of the bond. Gordon A. Ramsay, appellant, appeared in court and filed written objections to the approval of the bond of VanMeter, alleging, in substance, that he (Ramsay) was public administrator of Cook county and had been appointed by the Governor of this State as such administrator for four years, beginning with the first Monday in December, 1917, and ending with the first Monday in December, 1921; that he had qualified as such public administrator and had been acting as such since the first Monday in December, 1917, and that the court was without right or power to approve the bond of VanMeter as public administrator. The court heard the application and the objections and entered an order approving the bond of VanMeter. Thereafter, on April 4, 1921, VanMeter made application to said court for letters of administration, as public administrator, in the estate of Paul Starke, deceased. Ramsay filed his objections to the appointment of VanMeter as administrator of said estate, alleging that the right of VanMeter to act as public administrator depended upon the validity of an order of removal of Ramsay by the Governor of Illinois before the expiration of his term as public administrator and upon the right of the Governor to appoint VanMeter to fill the alleged vacancy; and further, that the Governor was without power to remove Ramsay as public administrator of said county, that the appointment of VanMeter was a nullity, and that he, Ramsay, and not VanMeter, was entitled to

letters of administration, as public administrator, in said estate. The court overruled the objections of Ramsay and issued letters of administration in said estate to VanMeter. Afterwards, on April 12, 1921, Ramsay presented a formal petition to the probate court in said estate, asking that the letters of administration theretofore granted to VanMeter be revoked and that letters of administration in said estate be issued to Ramsay as public administrator, alleging practically the same grounds as already alleged by him to the court's issuing letters in said estate to VanMeter. The probate court overruled all the objections of Ramsay and issued letters of administration in said estate to VanMeter. Ramsay has prosecuted two separate appeals to this court, (1) from the order of the court approving the bond of VanMeter as public administrator; and (2) from the order of the court issuing letters of administration to VanMeter and refusing to revoke the same in said estate.

Separate abstracts have been filed in this court in both of these appeals. The questions for decision in both appeals are practically the same and depend upon the same state of facts. The briefs and arguments of appellant filed in the two causes are exactly the same, except that each set of briefs contains a statement applicable only to the case in which it is filed. The same is true in all respects with reference to the briefs filed by appellee. The causes have been consolidated in this court for hearing and decision.

The facts admitted and established in both of the proceedings before the probate court are the following: Gordon A. Ramsay was duly appointed and commissioned public administrator of Cook county by Gov. Lowden for four years, beginning December 3, 1917, and ending December 3, 1921. After his appointment he presented his petition and bond to the probate court of Cook county for letters of administration in various estates in which it was proper for the public administrator to apply. Letters of administration were issued to him upon such applications and the

estates were committed to his management as administra-
tor. He was continuously recognized by the probate court
as public administrator until the time of the application by
VanMeter for the approval of his bond as public adminis-
trator. On February 23, 1921, Gov. Small filed in the office
of the Secretary of State the following order: "In accord-
ance with the provisions of the constitution of the State of
Illinois I hereby remove Gordon A. Ramsay, of Chicago,
from the office of public administrator of Cook county for
incompetency, and I do hereby declare that office vacant."
On said last day the Governor sent to the senate the nomi-
nation of VanMeter as public administrator of Cook county,
and on March 9, 1921, the senate confirmed the appointment
of VanMeter as such public administrator. On the same
day the Governor issued a commission to VanMeter as pub-
lic administrator in and for the county of Cook for the
unexpired term ending on the first Monday in December,
1921, or until his successor shall be duly appointed and
qualified. The order of the court approving the bond of
VanMeter as public administrator recited that Ramsay had
duly qualified as such administrator for the four years be-
ginning December 3, 1917, and has since his appointment
been acting as administrator and has administered many
estates in a competent manner and to the satisfaction of
the court; that it is not considered by the court to be with-
in its power, on the issues presented to it, to pass on the
competency of Ramsay as a ground for his removal by the
Governor; that on February 23, 1921, the Governor under-
took to appoint VanMeter as public administrator to serve
for the unexpired portion of the term of Ramsay and
thereafter issued to VanMeter his commission as such pub-
lic administrator.

In the order of the court allowing the appeal the court
found that the public administrator was a State officer
within the meaning of the constitution, and that the judg-
ment entered depends upon and necessarily involves the con-

struction of sections 10, 11, 12 and 24 of article 5 and of articles 3 and 4 of the constitution of Illinois. The same finding and recitals are found in the order of the court appointing VanMeter as administrator of the estate of Starke, and it was stipulated by the parties at the hearing upon the application of VanMeter for letters of administration that said estate was one proper to be administered by the public administrator of Cook county, as provided by section 18 of the act in regard to the administration of estates.

Questions of the construction of various sections of the constitution of 1870, and particularly of sections 10 and 12 of article 5 thereof, were raised before the probate court, and the orders of the court disclose the same by their recital. The validity of the act of the Governor in removing a public administrator and appointing a successor was challenged before the court. These appeals are therefore properly prosecuted directly to this court, as the probate court was acting within its jurisdiction in passing upon the question whether or not appellee was legally appointed and entitled to qualify and to be appointed as administrator in said estate, etc. (*Strong* v. *Dignan,* 207 Ill. 385; *Page* v. *Hardin,* 8 B. Mon. 648.) The right of appeal to this court is unquestioned by appellee.

Sections 10 and 12 of article 5 of the constitution provide as follows:

"Sec. 10. The Governor shall nominate, and by and with the advice and consent of the senate, (a majority of all the senators selected concurring, by yeas and nays,) appoint all officers whose offices are established by this constitution, or which may be created by law, and whose appointment or election is not otherwise provided for; and no such officer shall be appointed or elected by the General Assembly.

"Sec. 12. The Governor shall have power to remove any officer whom he may appoint, in case of incompetency, neglect of duty, or malfeasance in office; and he may declare

his office vacant, and fill the same as is herein provided in other cases of vacancy."

Section 44 of the act regarding administration of estates reads as follows:

"Sec. 44. The Governor of this State, by and with the advice and consent of the senate, shall, before the first Monday of December, 1881, and every four years thereafter, appoint in each county in this State, and as often as any vacancies may occur, a suitable person to be known as public administrator of such county, who shall hold his office for the term of four years from the first Monday of December, 1881, or until his successor is appointed and qualified; and the public administrators, in office at the time of the first appointment under the provisions of this section, shall, immediately upon the qualification of the persons appointed under the provisions hereof, turn over all moneys, books and papers, appertaining to their offices respectively, to the persons so appointed; and such public administrators so appointed shall proceed to settle up all unsettled estates in accordance with law."

The question for decision in this case is the legality of the acts of the Governor in removing appellant as public administrator and appointing appellee as his successor to fill the remainder of the term. In the decision of this question it is necessary to determine whether or not the public administrator in this State is an officer, within the scope and meaning of sections 10 and 12 aforesaid of the constitution.

It has been definitely determined by the decisions of this court that sections 10 and 12 of article 5 of the constitution refer only to offices under the State government. It was so held in *People* v. *Loeffler*, 175 Ill. 585, and it was said in that case that it cannot be doubted that the words "office" and "officer," as used in all the subsequent sections of article 5, refer to State officers. In *Wilcox* v. *People*, 90 Ill. 186, the same holding was made, and it was there determined that the West Chicago Park Commission-

ers are State officers within the meaning of said sections of the constitution and not merely minor municipal or corporate officers, but are agents by whom, in part, the people of the State carry on the government. It was also held upon said grounds that the Governor not only had the right to appoint but also the power to remove the commissioners. In *City of Chicago* v. *Wright*, 69 Ill. 318, it was said: "The heads of the police department of Chicago are not mere municipal officers, whose functions relate exclusively to that particular municipality, but they are State officers,— that is, officers whose duties concern the State at large, or the general public, although exercised within defined territorial limits." In *People* v. *Morgan*, 90 Ill. 558, it was again held that said sections of the constitution refer to officers performing duties for the State as contradistinguished from the county, city, township or other municipal officers.

It is to be noted that the question whether or not an officer is a State officer within the meaning of the constitution neither depends upon the extent of the territory in which his official duties must be performed nor upon the extent of the territory in which his official acts are binding. Generally speaking, a State officer is one whose duties and powers are co-extensive with the State, while a county officer is one whose duties and powers are co-extensive with the county. The fact that the official acts of an officer are so far extra-territorial that they are binding throughout the State does not necessarily make the officer who performs such acts a State officer. (*People* v. *Evans*, 247 Ill. 547.) On the other hand, the duties of a State officer, as defined by the constitution, may be all confined to and performed within the territorial limits of a small municipality. (*Wilcox* v. *People, supra.*) In such a case the officer is a municipal officer in one sense, and a State officer, within the meaning of the constitution, in the sense that we are now using that term. In *People* v. *Toledo, St. Louis and Western Railroad Co.* 267 Ill. 142, it was held that the assistant State's

attorney and assistant superintendent of schools are public or State officers within the definition of section 24 of article 5 of the constitution, and also are county officers. All officers whose duties concern the State at large, or the general public, are State officers although such duties are exercised within defined territorial limits. *City of Chicago v. Wright, supra.*

An "office," as defined by section 24 of article 5 of the constitution, is a public position created by the constitution or law, continuing during the pleasure of the appointing power or for a fixed time, with a successor elected or appointed. An "employment" is an agency for a temporary purpose, which ceases when that purpose is accomplished. As was said by this court in *Fergus v. Russel,* 270 Ill. 304, there are two distinct elements in the above definition of the word "office." In the first place, it must be a public position and it must be created either by the constitution or by law; and in the next place, it must be a permanent position with continuing duties. To determine whether the first element is present we have but to look to our constitution and our statute to see whether the particular position under consideration has been created by the constitution or by law. To ascertain whether the second element is present it is necessary to determine the character of the position. This is not determined by the method in which the occupant or holder of the position is selected,—whether by appointment or election. If the duties of the office are continuing and it is necessary to elect or appoint a successor to the several incumbents, then the second element is present whether the incumbent be selected by appointment or by election or whether the incumbent be appointed during the pleasure of the appointing power or be elected for a fixed term.

This court has held that it was the intention of the framers of the constitution of 1870 to adopt the rule which had been established under the constitution of the United States with respect to appointments made by the President

which did not exist under the State constitution of 1818, to-wit, that the power of removal by the Governor was incident to and co-extensive with his power of appointment. (*Wilcox* v. *People, supra.*) It is quite clear that the Governor does have authority to appoint and remove any officer who is a public or State officer as above defined and whose appointment or election is not otherwise provided for, and that he has no such power under the constitution where the position is that of a mere employee or trustee or other agent who is not an officer as already defined. Accordingly, this court held in *Bunn* v. *People,* 45 Ill. 397, that the commissioners appointed by the act of 1867 to erect a new State house were not officers within the meaning of section 12 of article 5 of the constitution but employees for a single purpose,—that of superintending the erection of a State house at daily wages, their employment to cease when the structure was completed. And in the case of *People* v. *Ridgely,* 21 Ill. 64, it was held that trustees appointed by the Governor to take charge of the assets and wind up the affairs of the State bank were not officers but were trustees of the bank and the creditors, acting for private persons and not performing any functions of government, and therefore not subject to removal by the Governor.

The position of public administrator is created by statute or law, as has already been shown. His duties are continuing and for a fixed time. His office as public administrator ceases, under our statute, the moment his term expires or is terminated and his successor is qualified, and he has no further duties to perform except to complete the administration of estates entered upon by him theretofore, and in which he continues in the same capacity as that of any ordinary administrator. His successor is likewise appointed by the Governor for a fixed time. So far his position contains every element contained in the definition of an office in section 24 of article 5 of the constitution save two. To determine whether or not he is a State officer within the

meaning of the constitution we have only to determine
whether or not his position is "a public position" and he
an officer within the meaning of section 24. It is clear
that his position is not a mere employment as defined by
the constitution, and we have no further occasion to dis-
cuss the meaning of the word "employment."

The public administrator is required to give bond as
State officers are required to do. He takes an oath of office,
as all State officers are required to do, to support the con-
stitution of the United States and of this State, and, in ad-
dition thereto, that he will faithfully discharge the duties
"of the office of public administrator of ......... county,
according to the best of my ability." (Administration act,
sec. 45.) The ordinary administrator takes no such oath.
It is true that the public administrator receives no salary
or fees from the State, but it is not necesssary for anyone
to receive fees or salary in a position to be an officer, either
from the State or otherwise. It is also true that he receives
fees out of the estates that he administers, as do the ordi-
nary administrators, and by the allowance of the court, and
that he performs his duties as administrator in particular
estates under the orders of the court, but his grant of let-
ters of administration in particular estates by the court is
*virtute officii,* as the court has no discretion to grant such
letters to anyone else when the public administrator is re-
quired to be appointed under sections 18 and 46 of the Ad-
ministration act. Under section 50 of the Administration
act he also takes charge of estates without any judicial or-
der in case of the death of an intestate not leaving a widow
or next of kin or creditor within this State, or when the
decedent is a non-resident; and he may take such measures
as he may deem proper to protect and secure the effects of
such intestate from waste or embezzlement until adminis-
tration is granted, and his expenses in so doing are given
preference over all other demands except funeral expenses.
Under section 49 of the same act, on final settlement of an

estate any money unclaimed in the hands of the public administrator must be paid over to the county treasurer, and the county shall be answerable for the same, without interest, to such persons as shall establish legal claim therefor. The public administrator, under our statute, occupies a very different position to that of the ordinary administrator and is undoubtedly an officer.

The right to demand that property pass by inheritance or will to heirs or devisees is not an inherent or natural right but is purely a statutory right. The right to distribute and to control the distribution of an intestate's property is in the State, and the legislature of the State can make any provision for the distribution of the intestate's property that it may see fit. (9 R. C. L. 13, 14.) We think that the office of public administrator in this State is a public office within the meaning of sections 10 and 12 of article 5 of the constitution. The duties of administering and distributing the estates of deceased persons that cannot be administered or distributed by the ordinary administrator by the election of the widow or the heirs or the creditors concern the State at large or the general public, and our public administrators are public officers. All administrators are trustees for the heirs and the creditors of the intestate, and we think it is true that the ordinary administrator is not an officer within the legal definition of that term but is a mere trustee, acting in a private capacity for private persons. The State in all ordinary administrations has waived its right to administer such estates by any public officer and has delegated full authority to control the administration thereof to the heirs, the widow and the creditors, and it does not concern itself further about the distribution of such estates. The only parties interested therein or taking any part therein are the parties who are directly interested in the estate, and they may control it by agreement, waiving all preference they may have under the statute to administer, or they may elect to have the estate administered and dis-

tributed by the interested parties having the preference under the law to administer. *Cotterell* v. *Coen,* 246 Ill. 410.

In *Stevens* v. *Larwill,* 110 Mo. App. 140, it was decided, as contended by appellant, that an ordinary administrator or executor is not an officer within the meaning of the law, and we agree with that conclusion. In *Mitchell* v. *Nelson,* 49 Ala. 88, it was held that a public administrator in that State is not a public officer, and among the reasons given for the court's holding are that a public officer is a person who exercises the functions of a public office, and that under the law of that State an administrator is a trustee, whose duty it is to be employed in collecting the assets of the deceased, paying his debts and distributing the residue,—matters wholly concerning private rights; that in that State public administrators are not required to take any constitutional oath of office, as other public officers are required to do, and are not required to take the "dueling oath," as all public officers are required to do, and that they are not commissioned as other public officers are commissioned. Our public administrator is commissioned, and all of the requirements that public administrators in Alabama are not required to take are required of our public administrators. In *Los Angeles County* v. *Kellogg,* 146 Cal. 590, the Supreme Court of California held that the public administrator of that State is a county officer and also a public officer. The requirements and duties of a public administrator in that State are very similar to ours. Our holding is also supported by 1 Woerner on American Law of Administration, sec. 240.

We think the judgments in both appeals were properly decided by the court and that the judgments should be, and they are accordingly, affirmed.    *Judgment affirmed.*