DAVID GRIMES *et al.*, Plaintiffs-Appellants, v. GILBERT SAIKLEY, Indiv. and as a Member of Saikley, Garrison, Colombo and Barney, LLC, *et al.*, Defendants-Appellees.

Fourth District   No. 4—08—0336

Opinion filed March 10, 2009.

Patricia A. Zimmer and George R. Ripplinger (argued), both of Ripplinger & Zimmer, LLC, of Belleville, for appellants.

Karen L. Kendall (argued), of Heyl, Royster, Voelker & Allen, of Peoria, and James C. Kearns, of Heyl, Royster, Voelker & Allen, of Urbana, for appellee Gilbert Saikley.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Paul Racette (argued), Assistant Attorney General, of counsel), for appellee George Weller.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In March 2007, plaintiffs filed a two-count complaint against defendants, Gilbert Saikley, individually and as a member of Saikley, Garrison, Colombo & Barney, LLC; and George Weller, the public administrator of Vermilion County. The trial court granted defendants' motions to dismiss. In July 2007, plaintiffs filed an amended complaint. Again, defendants filed motions to dismiss and the trial court granted them; the court dismissed the claims against Weller with prejudice. In February 2008, plaintiffs filed a second-amended complaint. In April 2008, the trial court granted defendants' motions to dismiss. Plaintiffs appeal.

## I. BACKGROUND

On March 18, 2005, plaintiffs and defendant George Weller entered into an agreement to close the estate of Clarence Grimes, plaintiffs' father. The agreement alleged the following facts.

On January 7, 2003, Clarence's widow, Virginia Grimes, hired attorney Gil Garman to open the estate and represent her as executrix. Later in January 2003, Garman filed a petition to open the estate and the trial court entered an order opening the estate.

On March 24, 2003, plaintiffs filed a petition to terminate the independent administration, and on May 22, 2003, the court entered an order, over Garman's objection, terminating independent administration. On May 7, 2003, plaintiffs filed a petition to remove the personal representative. On August 12, 2003, plaintiffs filed a motion to disqualify Garman from serving as legal counsel for the estate due to a variety of conflicts of interest. The court denied the motion in November 2003.

On August 27, 2003, plaintiffs filed their complaint to interpret the will, and on September 12, 2003, Garman filed the estate's answer. In April 2004, the trial court denied the motion to dismiss the complaint to interpret the will.

On May 19, 2004, plaintiffs filed a petition for emergency citation on the basis that Virginia had been diagnosed with terminal cancer and was unable to serve as executrix of the estate.

The agreement stated that on unknown dates, Virginia, in her

personal capacity, took possession of all estate vehicles and converted them to herself personally by changing vehicle titles to her name or allowing family members to use the vehicles without proper reimbursement to the estate. This was done without court authority and before the costs of administration were paid. On May 28, 2004, Virginia converted to herself over $20,000 from a First National Bank of Danville account ($2,097.29) and a First Midwest Bank certificate of deposit ($18,732.71). The agreement stated various members of Virginia's family assisted/conspired with her in transferring the vehicles and other assets from the estate to Virginia without court authority.

On July 20, 2004, following an evidentiary hearing on the emergency citation, the court removed Virginia as executrix of Clarence's estate after finding she mismanaged estate assets. The court appointed Weller as "executor to the will annexed."

Virginia died in August 2004, and in September 2004 her "family members removed and converted to their personal use, every item of personal property situated in the residence which was not attached to the building."

The agreement set forth how the remaining estate assets would be distributed. Plaintiffs and Weller signed the agreement.

On March 13, 2005, Weller submitted a final report that stated all assets had been distributed as set forth in the agreement to close the estate and asking that Weller be discharged and the estate be closed. Weller also assigned to plaintiffs "all of the [e]state's interest in any and all claims, demands, and/or causes of action *** which the [e]state may have against any person or entity—with respect to any and all issues." The court entered an order approving the final report and the agreement to close the estate. Moreover, the court approved an interim accounting and amended final account, both of which were filed on February 28, 2005. The order further ordered Weller be discharged as public administrator serving as successor executor and the estate be closed.

On March 14, 2007, plaintiffs filed a two-count complaint against defendants Weller and Weller's attorney, Gilbert Saikley, both individually and as a member of Saikley, Garrison, Colombo & Barney, LLC. In April 2007, Weller filed a motion to dismiss, in which he claimed plaintiffs' claims against him were barred by both sovereign immunity and public-official's immunity. Saikley and his law firm also filed a motion to strike and dismiss. In June 2007, the trial court granted the motions to dismiss. In July 2007, plaintiffs filed an amended complaint and defendants again filed motions to dismiss. The trial court again granted the motions to dismiss. The court dismissed the claims against

Weller with prejudice after concluding the claims against Weller, as public administrator of Vermilion County, must be brought in the Court of Claims as Weller was a state employee. The court also struck the claims against Saikley and the firm but allowed plaintiffs to amend those claims a second time.

On February 22, 2008, plaintiffs filed a two-count second-amended complaint against defendants. Count I of the second-amended complaint alleged negligence against Saikley, Saikley's firm, and Weller. Plaintiffs' attorney indicated Weller was named as a defendant in the complaint in order to preserve the claims against him. According to plaintiffs' brief, this count was brought by plaintiffs in their capacity as assignees.

Count I asserted Saikley had at least three conferences with Gil Garman, who was Virginia's attorney when she was administratrix of the estate, regarding the estate. Weller had the duty to take such measures as he deemed proper to protect the estate from waste, loss, or embezzlement. Saikley "had to use the same degree of skill and care as an ordinarily careful attorney would exercise under similar circumstances." The complaint further asserted the primary purpose of the attorney-client relationship between Weller and Saikley was to carry out the instructions of Grimes's will and to provide legal advice as to the duties required for executors, including proper measures to be taken to protect and secure the estate from waste, loss, or embezzlement for the benefit of the plaintiffs as heirs and legatees of the will. Saikley was aware that Virginia's family was improperly in possession of real estate and estate personalty located on that real estate. Saikley was also aware that the matter was contentious, with plaintiffs on one side and Virginia's family on the other. Finally, Saikley was aware no estate inventory had been compiled or filed with the probate court. The complaint alleged Weller and Saikley violated their duty to the estate by one or more of the following negligent acts or omissions:

"a. Defendant Saikley failed to properly advise and instruct George Weller regarding protection and securing of estate property;

b. Defendant Saikley failed to take proper action through court filings to protect and secure estate property;

c. Allowed the family of Virginia Hawkes Grimes to damage and allow damage to occur to the personalty, fixtures[,] and realty of the estate when the family of Virginia Hawkes Grimes had no right to do so;

d. Allowed the family of Virginia Hawkes Grimes to take various articles of personalty and fixtures which were the property of the estate when the family of Virginia Hawkes Grimes had no right to do so;

e. Directed the family of Virginia Hawkes Grimes to take personalty and fixtures belonging to the estate when the family of Virginia Hawkes Grimes had no right to do so;

f. Allowed the family of Virginia Hawkes Grimes to use personalty, fixtures[,] and realty of the estate when the family of Virginia Hawkes Grimes had no right to do so;

g. Allowed the family of Virginia Hawkes Grimes to occupy and live in realty owned by the estate after the death of Virginia Hawkes Grimes;

h. Failed to gather, inventory[,] and protect the assets of the estate;

i. Refused to file suit against William Townsley, Robert Banks, Gil Garman[,] and Sebat, Swanson, Banks[,] Garman & Townsley, a partnership for their negligence in representation of the administrat[rix] of the will of Clarence O. Grimes;

j. Failed to take any action to recover estate assets from Virginia Hawkes Grimes or her family;

k. Directed Vermilion County police officers to take no action to prevent the family of Virginia Hawkes Grimes from looting the estate;

l. Entered their appearance and objected to the reopening of the estate and the appointment of one of the plaintiffs as administrator in a reopened estate for the sole purpose of preventing the estate from bringing suit against them for the negligence above described in paragraph 22, subparagraphs a [through] k above and their conduct in aiding and abetting the negligent and intentional conduct of Virginia Hawkes Grimes, her family as described in [c]ount II herein and William Townsley, Robert Banks, Gil Garman and Sebat, Swanson, Banks[,] Garman & Townsley, a partnership for their negligence and intentional conduct in their representation of the Administrat[rix] of the Estate of Clarence O. Grimes, Virginia Hawkes Grimes[,] and for their own self-serving actions in that estate."

Count II made the same assertions that Saikley was aware of the contentiousness of the matter, Virginia's family was improperly in possession of estate property, and no estate inventory had been compiled. Count II alleged Weller had the duty to protect the estate from waste, loss, or embezzlement. According to the complaint, during the attorney-client relationship between Weller and defendants, defendants knowingly conspired, aided, and abetted William Townsley, Robert Banks, Gil Garman, and Sebat, Swanson, Banks, Garman & Townsley, a partnership, Virginia Hawkes Grimes, and the family of Virginia Hawkes Grimes in violation of their duty to the estate and to plaintiffs by the following:

"a. Knowingly allowed the family of Virginia Hawkes Grimes to damage and allow damage to occur to the personalty, fixtures[,] and realty of the estate which was the legacy of plaintiffs from the estate when the family of Virginia Hawkes [Grimes] had no right to do so;

b. Knowingly allowed the family of Virginia Hawkes Grimes to take various articles of personalty and fixtures which were the property of the estate when the family of Virginia Hawkes Grimes had no right to do so;

c. Knowingly directed the family of Virginia Hawkes Grimes to take personalty and fixtures belonging to the estate when the family of Virginia Hawkes Grimes had no right to do so;

d. Knowingly allowed the family of Virginia Hawkes Grimes to use personalty, fixtures[,] and realty of the estate when the family of Virginia Hawkes Grimes had no right to do so;

e. Knowingly allowed the family of Virginia Hawkes Grimes to occupy and live in realty owned by the estate after the death of Virginia Hawkes Grimes;

\* \* \*

k. Knowingly failed to gather, inventory[,] and protect the assets of the estate;

l. Explicitly refused to file suit against William Townsley, Robert Banks, Gil Garman and Sebat, Swanson, Banks[,] Garman & Townsley, a partnership[,] for their negligence in representation of the administrat[rix] of the will of Clarence O. Grimes;

m. Failed to take action to recover estate assets from Virginia Hawkes Grimes or her family;

n. Directed Vermilion County police officers to take no action to prevent the family of Virginia Hawkes Grimes from looting the estate;

o. Entered their appearance and objected to the reopening of the estate and the appointment of one of the plaintiffs as administrator in a reopened estate for the sole purpose of preventing the estate from bringing suit against them for the intentional conduct above described herein and the negligent conduct described in [c]ount I paragraph 22, subparagraphs a [through] k; aiding and abetting William Townsley, Robert Banks, Gil Garman and Sebat, Swanson, Banks[,] Garman & Townsley to avoid suit by the estate for negligence, fraud[,] and aiding and abetting Virginia Hawkes Grimes and her family in their conversion and damage of estate property."

On March 18, 2008, Saikley, individually and as a member of his firm, filed a motion to strike and dismiss the second-amended complaint under sections 2—615 and 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615, 2—619 (West 2006)). At an

April 9, 2008, hearing, the trial court granted Saikley's motion to strike and dismiss the complaint. With respect to count I, the court stated (1) the claims against Saikley were for legal malpractice and legal-malpractice claims are not assignable in Illinois and (2) Saikley owed a duty to his client, Weller, not to plaintiffs. With respect to count II, the court stated the complaint did not establish the necessary elements. Specifically, the court stated (1) the claims fell short of showing Saikley "was regularly aware of his role as part of the overall or tortious activity at the time he provided assistance" and (2) plaintiffs did not plead Saikley knew "of and substantially assist[ed] the principal violation." The court asked plaintiffs' counsel whether she "wished to stand on [her] count II" or whether she "want[ed] leave to amend that yet again." Counsel replied, "I believe at this point, Your Honor, I would go ahead and stand on the [s]econd [a]mended [c]omplaint."

This appeal followed.

## II. ANALYSIS

### A. Standard of Review

In ruling on a motion to dismiss under either section 2—615 or section 2—619 of the Code, the trial court accepts all well-pleaded facts in the complaint as true and draws all reasonable inferences from those facts in favor of the nonmoving party. *Lykowski v. Bergman*, 299 Ill. App. 3d 157, 162, 164-65, 700 N.E.2d 1064, 1069-70 (1998). We review dismissals under sections 2—615 and 2—619 *de novo. Lykowski*, 299 Ill. App. 3d at 162, 164, 700 N.E.2d at 1069-70.

### B. The Trial Court Properly Dismissed the Claims Against Weller

The trial court dismissed the claims against Weller after concluding Weller's alleged wrongful conduct stemmed solely "from his duties as a state employee[, as public administrator of Vermilion County,] to protect and secure an Illinois estate from waste, loss[,] or embezzlement," and therefore the suit was really "one against the State of Illinois." Therefore, according to the court, the claims against Weller must be brought in the Court of Claims, which has exclusive jurisdiction.

Pursuant to section 13—1 of the Probate Act of 1975 (Probate Act), the Governor, by and with the advice and consent of the Senate, appoints a public administrator for each county for a term of four years, and "every [four] years thereafter or until his successor is appointed and qualified." 755 ILCS 5/13—1 (West 2006). The public administrator has the same powers and duties of other representatives of estates appointed under the Probate Act until he is either

discharged or his authority is terminated by order of the court. 755 ILCS 5/13—4(a) (West 2006). A public administrator may take such measures as he deems appropriate to protect an estate from waste, loss, or embezzlement. 755 ILCS 5/13—4(a) (West 2006).

The public administrator must take and file

"an oath or affirmation that he will support the Constitution of the United States and the Constitution of the State of Illinois and will faithfully discharge the duties of his office and shall enter into a bond payable to the people of the State of Illinois in a sum of not less than $5,000 with security as provided by this Act and approved by the court of the county in which he is appointed, conditioned that he will faithfully discharge the duties of his office." 755 ILCS 5/13—2 (West 2006).

In counties having a population less than 1 million, compensation to the public administrator is by way of the fees received of his office and he/she also bears the expenses connected with the operation of the office. 755 ILCS 5/13—3(b) (West 2006). In counties with a population over 1 million, the public administrator pays all fees collected by the office into the county treasury, and each year the county board appropriates funds to pay the public administrator's salary (a minimum of $20,000) and the office expenses. 755 ILCS 5/13—3(a) (West 2006).

Plaintiffs assert that "there is a question as to whether Weller is a state employee." Plaintiffs note that Weller is not paid by the State for the services he performs—his fee is provided from the assets of the estates he administers (755 ILCS 5/13—3(b) (West 2006))—so "it is difficult to understand how he can be considered a [s]tate employee."

■ Weller argues that plaintiffs have forfeited the argument that Weller is not a state employee (1) by failing to cite any authority for their suggestion that only employees paid directly by the State constitute state employees and (2) because their argument is cursory and undeveloped. We agree.

Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)) requires that argument in an appellant's brief include citation to the authorities relied upon and provides that points not argued are forfeited. See also *Vernon Hills III Ltd. Partnership v. St. Paul Fire & Marine Insurance Co.*, 287 Ill. App. 3d 303, 310-11, 678 N.E.2d 374, 379 (1997). Consequently, this argument is forfeited.

■ In *Crews v. Lundquist*, 361 Ill. 193, 201, 197 N.E. 768, 772 (1935), our supreme court stated "the services of a public administrator are rendered in the discharge of a function of [s]tate government." The court also recognized that as a "public officer [a public administrator] enjoys certain privileges not enjoyed by private administrators and is under certain duties not required of such other administra-

tors." *Crews*, 361 Ill. at 199, 197 N.E. at 771. Moreover, in *Ramsay v. VanMeter*, 300 Ill. 193, 204, 133 N.E. 193, 196 (1921), the supreme court held a public administrator of an estate is "undoubtedly an officer" of the State. In *People ex rel. Lowe v. Marquette National Fire Insurance Co.*, 351 Ill. 516, 526, 184 N.E. 800, 804 (1933), the court stated the public administrator "is a [s]tate officer just as a [d]irector of [t]rade and [c]ommerce is a [s]tate officer."

In *Kulas v. Vogler*, 49 Ill. Ct. Cl. 172, 172 (1997), the claimant brought a claim against respondent "as 'an officer of the [S]tate' and name[d] him in his capacity as the [p]ublic [a]dministrator and [g]uardian of Lake County, in which capacity he [was] alleged to have acted in the" real-estate transaction that was the subject of the claim. The respondent allegedly executed a real-estate purchase/sale contract in his capacity as a state official. *Kulas*, 49 Ill. Ct. Cl. at 172. The claimant sought damages for the respondent's alleged breach of the contract to convey real estate. *Kulas*, 49 Ill. Ct. Cl. at 172. The Court of Claims noted the respondent had argued the claim was "actually against the estate, and against [the respondent] only in his capacity as executor and not in his capacity as public administrator (*i.e.*, *not as a [s]tate official or [s]tate employee*)." (Emphasis added.) *Kulas*, 49 Ill. Ct. Cl. at 173. The court concluded claimant's contract was "with the probate estate and not with the State of Illinois." *Kulas*, 49 Ill. Ct. Cl. at 173. The court further stated, "It is clear *** that the *operative* capacity in which [the respondent] acted in this real[-]estate transaction was that of executor and not that of his public office. Moreover, no substantive or substantial nexus with his official capacity has been alleged." (Emphasis in original.) *Kulas*, 49 Ill. Ct. Cl. at 174. The court then dismissed the claim for lack of subject-matter jurisdiction. *Kulas*, 49 Ill. Ct. Cl. at 174.

As shown, both our supreme court and the Court of Claims have stated that public administrators are state officers. Accordingly, we conclude Weller, as public administrator of Vermilion County, was a state employee.

The United States Supreme Court has recognized that a sovereign entity cannot be sued without its consent. *Alden v. Maine*, 527 U.S. 706, 745, 144 L. Ed. 2d 636, 672-73, 119 S. Ct. 2240, 2262 (1999). "The purpose of sovereign immunity is to protect the [S]tate from interference with the performance of governmental functions and to preserve and to protect state funds." *People ex rel. Manning v. Nickerson*, 184 Ill. 2d 245, 248, 702 N.E.2d 1278, 1280 (1998).

■ "The determination of whether an action is in fact a suit against the State turns upon an analysis of the issues involved and the relief sought, rather than the formal designation of the parties." *Cur-*

*rie v. Lao*, 148 Ill. 2d 151, 158, 592 N.E.2d 977, 980 (1992). "[S]overeign immunity applies in an action naming a state employee as a defendant when the impact on the State makes the suit, for all practical purposes, one against the State." *Evans v. Page*, 341 Ill. App. 3d 486, 490, 792 N.E.2d 805, 808 (2003). Illinois courts consider the following three criteria in determining whether an action is really against the State:

> "(1) no allegations *** [the] agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of [s]tate employment; and (3) *** the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State." *Robb v. Sutton*, 147 Ill. App. 3d 710, 716, 498 N.E.2d 267, 272 (1986).

If these three criteria are not met, the court must consider the relief sought, *i.e.*, whether judgment for the plaintiff controls the State's actions or subjects it to liability. *Jackson v. Alverez*, 358 Ill. App. 3d 555, 560, 831 N.E.2d 1159, 1164 (2005). "An action brought nominally against a [s]tate employee in his individual capacity will be found to be a claim against the State where a judgment for the plaintiff could operate to control the actions of the State or subject it to liability." *Currie*, 148 Ill. 2d at 158, 592 N.E.2d at 980.

Plaintiffs do not argue Weller acted beyond the scope of his authority or that his actions were outside Weller's normal and official functions. Instead, plaintiffs argue Weller breached duties that any administrator would owe to the beneficiaries of an estate, independently of whether he was a public administrator. Weller responds that this argument is too simplistic and legally incorrect and cites *Brandon v. Bonell*, 368 Ill. App. 3d 492, 858 N.E.2d 465 (2006), as support for that argument.

■ In *Brandon*, the plaintiffs, inmates at a correctional facility assigned to work in the kitchen, alleged the defendants, correctional-facility employees assigned to manage the kitchen, breached their duty to provide a reasonably safe workplace after plaintiffs were burned with hot grease. *Brandon*, 368 Ill. App. 3d at 494, 858 N.E.2d at 471. Defendants filed a motion for summary judgment on the basis that sovereign immunity applied to bar the claims against them. *Brandon*, 368 Ill. App. 3d at 495, 858 N.E.2d at 471. In *Brandon*, 368 Ill. App. 3d at 505-07, 858 N.E.2d at 480-81, the court discussed the "source of the duty" test, which is used to determine whether an employee breached a duty owed independently of his employment:

> "According to the test, in order to determine if sovereign immunity protects an employee for his own act of negligence, one must look to the source of the duty the employee is charged with breaching in

committing the negligent act. [Citation.] When the state employee allegedly breaches a duty that arises solely by virtue of his state employment, sovereign immunity will bar in circuit court an action that is founded on that breach. [Citation.] However, when an employee breaches a duty imposed independently of his state employment, he is entitled to no more immunity than is a private individual who breaches that same duty and the mere fact of his employment will not endow him with heightened protection. [Citation.] Thus, even if an employee is acting in the scope of his employment, he will not be protected by sovereign immunity for breaching a duty that arises separately from his state employment. [Citation.]

When applying the 'source of duty' test, courts have found that an independent duty is a duty imposed by the employee's status as something other than an employee. [Citations.] For example, professionals employed by the State, such as public defenders and doctors at state hospitals, are not protected by sovereign immunity when they breach a professional duty owed by every member of that profession. [Citations.] Because a professional duty derives from the duty of care imposed by one's status as a professional, this is an independent duty that does not arise solely from one's employment and, thus, a breach is not protected by sovereign immunity. [Citation.]

In the same way, the duty to drive safely is a duty one owes to others regardless of one's employment, because it arises from one's status as a person operating a vehicle on a state roadway and not as a person employed as a driver. [Citation.] As a result, when a state employee breaches her duty to drive safely, even if she is driving within the scope of her state employment, she has breached a duty not imposed solely by her employment and is not protected by sovereign immunity. [Citation.]

However, the 'source of duty' test is not without exceptions. [Citation.] When the conduct related to a state employee's independent duty is unique to his state employment such that a suit challenging this conduct could affect state policies or control its actions, then sovereign immunity will bar a suit against the state employee. [Citations.] For example, where a police officer was responding to an emergency call by driving south across westbound traffic, this manner of driving was considered unique to her state employment, and sovereign immunity applied despite her independent duty to drive with reasonable care. [Citation.]

Like duties as a professional and duties as a motor vehicle operator, duties imposed by statute are normally considered independent duties because most statutes impose specific requirements on all people regardless of their employment. [Citation.] For example, when an employee in the course of his employment breaches a duty

imposed by the Illinois Criminal Code of 1961 (720 ILCS 5/1—1 [through 47—25] (West 2004)), he has breached an independent duty and is not protected by sovereign immunity. [Citation.] However, recently in *Fritz* [*v. Johnston*, 209 Ill. 2d 302, 314, 807 N.E.2d 461, 468-69 (2004),] our supreme court clarified that where a statute imposes a duty only upon state employees, this statutory duty arises solely from their employment. [Citation.] As a result, an action resulting from a state employee's breach of a duty imposed solely by a statute pertaining only to state employees is protected by sovereign immunity. [Citation.] For example, where a professor sued the Board of Governors of State Colleges and Universities of Illinois, alleging that they had discharged her in violation of a section of the board of governors act, which applied only to the operation, management, and control of the State Colleges and Universities System, the court applied sovereign immunity despite the plaintiff's argument that the Board of Governors violated a statute. [Citation.]"

The court noted the parties distinguished public from private kitchens and focused their arguments on whether the defendants' duty to plaintiffs was unique to their state employment. *Brandon*, 368 Ill. App. 3d at 507, 858 N.E.2d at 481. The court affirmed on the basis that the statute relied on in the complaint imposed a duty on only the Department of Corrections. *Brandon*, 368 Ill. App. 3d at 508, 858 N.E.2d at 482. The Second District then stated as follows:

"Consequently, the statute imposes a duty solely on the Department of Corrections, and thus, any duty it imposes on Department of Corrections employees arises solely by virtue of their employment. Further, this court cannot find any common-law duty, akin to that of lawyers, doctors and other health professionals, and motor[-]vehicle operators, that kitchen supervisors have to keep kitchen staff members safe. [Citation.] Therefore, the trial court did not err in concluding that the duty defendants allegedly breached arose solely from their employment.

Because plaintiffs do not allege any facts showing that defendants breached a duty to plaintiffs that arose independently of defendants' state employment, the action is considered one against the State. [Citation.] In addition, because defendants' duty does not arise independently of their employment, we need not address if defendants' conduct was unique to their employment such that a lawsuit aimed at their conduct would operate to control state policies or actions, such that sovereign immunity applies." *Brandon*, 368 Ill. App. 3d at 508, 858 N.E.2d at 482.

■ Had Weller not been appointed to be public administrator of Vermilion County, he would not have been involved in this case. His

duties that arise under section 13—4 of the Probate Act (755 ILCS 5/13—4 (West 2006)) are imposed on him solely because he is the public administrator, a state employee or agent. Accordingly, the claims against Weller are barred by sovereign immunity and must be brought in the Court of Claims.

## C. Trial Court Properly Dismissed Count I Because Legal Malpractice Claims Are Not Assignable

The trial court dismissed count I against Saikley because (1) plaintiffs' legal-negligence/malpractice claim was not assignable to them and (2) Saikley owed no duty to plaintiffs. On appeal, plaintiffs acknowledge that Illinois courts that have considered the issue have held that legal-malpractice claims are not assignable. However, plaintiffs argue the circumstances of this case call for allowing the assignment of the legal-malpractice claim to them.

■ Illinois courts have consistently held a legal-malpractice claim is not assignable because of the personal nature of the attorney-client relationship and the potential for abuse. *Brocato v. Prairie State Farmers Insurance Ass'n*, 166 Ill. App. 3d 986, 988-89, 520 N.E.2d 1200, 1201 (1988) (Fourth District); *Brandon Apparel Group v. Kirkland & Ellis*, 382 Ill. App. 3d 273, 282, 887 N.E.2d 748, 755 (2008) (First District); *Wilson v. Coronet Insurance Co.*, 293 Ill. App. 3d 992, 994-95, 689 N.E.2d 1157, 1159 (1997) (First District); *Clement v. Prestwich*, 114 Ill. App. 3d 479, 480, 448 N.E.2d 1039, 1041 (1983) (Second District); *Christison v. Jones*, 83 Ill. App. 3d 334, 338-39, 405 N.E.2d 8, 11 (1980) (Third District). It has been stated "that 'sound public policy prohibits the assignment of legal[-]malpractice claims since an assignee would be a stranger to the attorney-client relationship, who was owed no duty by the attorney and who suffered no injury from the attorney's actions.' " *Brandon Apparel Group*, 382 Ill. App. 3d at 282, 887 N.E.2d at 755, quoting *Clement*, 114 Ill. App. 3d at 480-81, 448 N.E.2d at 1041.

The public policy prohibiting such an assignment is served under these facts because Saikley, as attorney for the public administrator of the estate, owed no duty to plaintiffs, the intended beneficiaries. In *Neal v. Baker*, 194 Ill. App. 3d 485, 486, 551 N.E.2d 704, 705 (1990), the sole income beneficiary filed a complaint against the attorney hired by the executor to serve as attorney in administrating the estate. The complaint alleged the attorney failed to make timely payments of inheritance taxes, failed to take advantage of certain tax benefits, and failed to diligently defend the will in a contest filed against the estate. *Neal*, 194 Ill. App. 3d at 486, 551 N.E.2d at 705. The trial court dismissed the complaint. The issue on appeal was whether an attorney

for the executor of the estate owed a duty to the beneficiaries of the estate, and if so, whether the plaintiff's complaint stated a cause of action on that duty. *Neal*, 194 Ill. App. 3d at 487, 551 N.E.2d at 705. The Fifth District found that, under the facts of the case, no duty existed on behalf of the attorney for the estate as to the plaintiff and stated the following:

> "It is well recognized that a fiduciary relationship exists between an attorney and a client, and the attorney owes the client the utmost fidelity, honesty[,] and good faith. [Citation.] An attorney owes a duty to a nonclient only in the most limited circumstances. [Citation.] In *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96, the supreme court established the standard for pleading the liability of attorneys to nonclients in legal[-]malpractice actions. The court extended the traditional concept of attorney liability to include third parties who were 'intended beneficiaries of the relationship between the client and the attorney.' (*Pelham*, 92 Ill. 2d at 20, 440 N.E.2d at 99.) A nonclient must prove that the primary purpose and intent of the attorney-client relationship is to benefit or influence the third party. (*Pelham*, 92 Ill. 2d at 21, 440 N.E.2d at 100.) Finally, the court held that where the attorney-client relationship is involved in an adversarial proceeding, there must be a 'clear indication that the attorney's representation is intended to directly confer a benefit upon the third party.' *Pelham*, 92 Ill. 2d at 23, 440 N.E.2d at 100." *Neal*, 194 Ill. App. 3d at 487, 551 N.E.2d at 705.

Moreover, in *In re Estate of Lis*, 365 Ill. App. 3d 1, 13, 847 N.E.2d 879, 889 (2006), petitioners argued attorneys for the estate owed a duty to all heirs since the attorneys were hired for the benefit of the estate. The First District rejected that argument and held the attorneys for the estate did not owe a duty to the petitioners (heirs of the estate). *Estate of Lis*, 365 Ill. App. 3d at 18, 847 N.E.2d at 893. The court cited several cases as support for its holding, including the following:

> "*Schwartz v. Cortelloni*, 177 Ill. 2d 166, 175, 685 N.E.2d 871[, 875-76] (1997) ('In determining whether a duty is owed to a third party, the key factor to be considered is whether the attorney acted at the direction of or on behalf of the client for the benefit of a third party'); *Gagliardo v. Caffrey*, 344 Ill. App. 3d 219, 228, 800 N.E.2d 489[, 496] (2003) ('the *beneficiaries* of an estate are intended to benefit from the estate and *are owed a fiduciary duty by the executor* to act with due care to protect their interests,' but '[t]hey are not*, however, *owed allegiance by the estate attorney*, who does not have an attorney-client relationship with the beneficiaries and whose "first and only allegiance" is to the estate in such adver-

sarial situations' (emphasis added)); *In re Estate of Vail*, 309 Ill. App. 3d 435, 441, 722 N.E.2d 248[, 253] (1999) ('The attorney for the executor does not have an attorney-client relationship with the beneficiaries \*\*\*. When an adversarial situation arises, the attorney for the executor owes allegiance only to the estate'); *In re Estate of Kirk*, 292 Ill. App. 3d 914, 919, 686 N.E.2d 1246[, 1250] (1997) ('An attorney representing an estate must give his first and only allegiance to the estate when such an adversarial situation arises. [Citation.] Even though the beneficiaries of a decedent's estate are intended to benefit from the estate, an attorney cannot be held to have a duty to those beneficiaries, due to this potential adversarial relationship. [Citation.]'); *Jewish Hospital of St. Louis, Missouri* [*v. Boatmen's National Bank of Belleville*, 261 Ill. App. 3d 750, 763, 633 N.E.2d 1267, 1277-78 (1994)] ('An attorney representing an estate must give his first and only allegiance to the estate, in the event that such an adversarial situation arises. Even though beneficiaries of a decedent's estate are intended to benefit from the estate, an attorney for an estate cannot be held to a duty to a beneficiary of an estate, due to the potentially adversarial relationship between the estate's interest in administering the estate and the interests of the beneficiaries of the estate'; finding no duty between the attorney and beneficiaries of estate); *Rutkoski v. Hollis*, 235 Ill. App. 3d 744, 751, 600 N.E.2d 1284[, 1289] (1992) (holding that the attorney for the executor of an estate, [where the executor] was also a beneficiary of that same estate, owed no duty based on the attorney-client relationship between the attorney and executor to him as a beneficiary: 'Defendant's primary duty was to Charles as executor of the estate and not to the beneficiaries of the estate, including Charles'; also noting that the plaintiff failed to cite any case in which an attorney who represented an estate was found to have an implied duty to the beneficiaries of that estate)." (Emphases in original.) *Estate of Lis*, 365 Ill. App. 3d at 17, 847 N.E.2d at 892-93.

■ At the hearing on the motion to dismiss, plaintiffs' attorney stated, "I don't think there's any question that the appellate courts in the State of Illinois that have considered the issue have stated that legal[-]malpractice claims are not assignable." Counsel then admitted she did not "think there's anything [she could] say that would put any kind of spin on those cases that would allow them to be read any differently." Instead, counsel asserted the better position would be to consider the circumstances of each case. We decline counsel's invitation to do so and conclude the trial court correctly dismissed count I against Saikley because (1) legal-malpractice claims cannot be assigned in Illinois and (2) Saikley owed no duty to plaintiffs as heirs.

## D. The Trial Court Properly Dismissed Count II

The trial court dismissed count II because plaintiffs did not (1) sufficiently allege that Saikley "was regularly aware of his role as part of the overall or tortious activity at the time he provided assistance" and (2) plead Saikley knew "of and substantially assist[ed] the principal violation." We agree.

■ In Illinois, to properly plead the tort of aiding and abetting, one must allege the following elements: " '(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.' " *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 27-28, 799 N.E.2d 756, 767 (2003), quoting *Wolf v. Liberis*, 153 Ill. App. 3d 488, 496, 505 N.E.2d 1202, 1208 (1987).

■ In count II of the second-amended complaint, plaintiffs alleged that defendants were aware of the contentiousness of the matter and that Virginia's family was improperly in possession of Clarence's estate's property. Paragraph 22 of count II of the amended complaint contains the allegations about how defendants allegedly aided and abetted William Townsley; Robert Banks; Gil Garman; and Sebat, Swanston, Banks, Garman & Townsley; and Virginia and her family in violation of their duty to both the estate and plaintiffs. Paragraph 22 of count II also alleged defendants (1) "knowingly allowed" Virginia's family to take, use, or damage property (subparagraphs a, b, d, and e); (2) "knowingly failed to gather, inventory[,] and protect the assets of the estate" (subparagraph k); (3) "explicitly refused to file suit" (subparagraph l), and (4) "failed to take any action to recover estate assets" (subparagraph m). While allegations of having knowledge and failing to take certain actions may be part of a cause of action for negligence in certain instances, those allegations do not allege that defendants (1) were regularly aware of their regular role in the tortious activity at the time of the assistance or (2) substantially assisted in the principal violation.

Plaintiffs also claimed defendants objected to the reopening of the estate and the appointment of one of the plaintiffs as administrator in a reopened estate for the sole purpose of preventing the estate from bringing suit against them (subparagraph o). This allegation does not allege that defendants (1) were regularly aware of their regular role in the tortious activity at the time of the assistance or (2) substantially assisted in the principal violation.

Finally, plaintiffs alleged defendants "knowingly directed" Virginia's family to take personalty and fixtures belonging to Clar-

ence's estate when her family had no right to do so (subparagraph c) and "directed Vermilion County police officers to take no action to prevent" Virginia's family from looting the estate (subparagraph n). Those allegations fail to state a claim for aiding and abetting. First, Saikley has no unilateral authority to direct police officers to do or abstain from doing anything. Second, even if true, the claims do not allege Saikley substantially assisted in the wrongful acts and was regularly aware of his role in the wrongful acts.

Accordingly, the trial court properly dismissed count II.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

APPLETON and POPE, JJ., concur.