Filed 11/20/09          NO. 4-09-0115

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| CLINTON SELLERS, | ) | Appeal from |
|      Plaintiff-Appellant, | ) | Circuit Court of |
|      v. | ) | Champaign County |
| KARL RUDERT, D.O., and BONUTTI | ) | No. 08L185 |
| ORTHOPEDIC SERVICES, LTD., | ) | |
|      Defendants, | ) | |
|      and | ) | |
| MARK BONNSTETTER, JENNIFER TYMKEW, ROC | ) | Honorable |
| BELLANTONI, MARK HUTSON, and BOB SPOO, | ) | Jeffrey B. Ford, |
|      Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the opinion of the court:

In August 2008, plaintiff, Clinton Sellers, filed a negligence action against defendants Dr. Karl Rudert, Bonutti Orthopedic Services, Ltd., Mark Bonnstetter, Jennifer Tymkew, Roc Bellantoni, Mark Hutson, and Bob Spoo for his injuries sustained during a September 2006 football game. Shortly thereafter, plaintiff filed an amended complaint to correct a misspelling. In September 2008, defendants Bonnstetter, Tymkew, Bellantoni, Hutson, and Spoo (collectively referred to as the University defendants) filed a combined motion to dismiss, asserting, inter alia, the trial court lacked subject-matter jurisdiction based on sovereign immunity. At a November 2008 hearing, the trial court granted plaintiff leave to file a second-amended complaint, dismissed the counts of the second-amended complaint against the University defendants based on sovereign immunity, and denied

plaintiff leave to file a third-amended complaint.  In December 2008, plaintiff filed a motion to reconsider the dismissal of the counts and the denial of the motion for leave to file a third-amended complaint, and the court later denied the motion.

Pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)), plaintiff appeals, contending (1) the trial court erred in finding sovereign immunity because (a) plaintiff properly alleged the University defendants exceeded the scope of their authority and (b) the court failed to recognize a duty independent of state employment and (2) the court erred by denying plaintiff leave to file a third-amended complaint.  We affirm in part, reverse in part, and remand with directions.

I. BACKGROUND

Plaintiff was a member of the Eastern Illinois University football team and suffered a severe neurologic injury while playing in a football game on September 2, 2006.  Prior to the injury, plaintiff had experienced trauma to his body during practice sessions that produced neurologic symptoms, including stingers.  University defendants Bonnstetter and Tymkew (the pair hereinafter referred to as the Trainers) were athletic trainers licensed by the State of Illinois and employees of the Eastern Illinois University athletic department.  University defendants Bellantoni, Hutson, and Spoo (the trio hereinafter referred to as the Coaches) coached the Eastern Illinois football team, which played at the National Collegiate Athletic Association (NCAA)

Division I-AA level.

In August 2008, plaintiff filed a complaint, asserting a professional-negligence count against the Trainers and a negligence count against the Coaches. Plaintiff also raised a professional-negligence count against the football team physician, Dr. Rudert, and Dr. Rudert's employer, Bonutti Orthopedic Services, Ltd. However, that count is not part of this appeal. Shortly after filing the complaint, plaintiff filed an amended complaint to correct the name of one of the University defendants.

In September 2008, the University defendants filed a combined motion to dismiss the amended complaint under section 2-619.1 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-619.1 (West 2008)), asserting the case should be dismissed under (1) section 2-619(a)(1) of the Procedure Code (735 ILCS 5/2-619(a)(1) (West 2008)) because the trial court lacked subject-matter jurisdiction based on sovereign immunity and (2) section 2-615 of the Procedure Code (735 ILCS 5/2-615 (West 2008)) because (a) the contact-sports exception applied and (b) the University defendants had no duty to warn plaintiff under the circumstances. At the November 19, 2008, hearing, on the motion to dismiss, plaintiff requested leave to file a second-amended complaint, which the trial court granted. The court then proceeded to hear the motion to dismiss on the sovereign-immunity

issue as to the second-amended complaint. After hearing the parties' arguments, the court dismissed the cause as to the University defendants due to lack of subject-matter jurisdiction. The court stated plaintiff could bring his cause of action in the Court of Claims but could not proceed any further in the circuit court against the University defendants. Plaintiff then requested leave to file a third-amended complaint against the University defendants. The court denied plaintiff's request.

On December 11, 2008, plaintiff filed a motion for reconsideration of (1) the dismissal of the counts in the second-amended complaint against the University defendants and (2) the denial of his request to file a third-amended complaint. The next day, the trial court denied the motion in a written order. On December 16, 2008, plaintiff filed a motion for the court to make a finding under Rule 304(a). Two days later, plaintiff filed a written motion for leave to file a third-amended complaint and for the first time submitted a proposed third-amended complaint. The court again denied plaintiff's request. On January 22, 2009, the court entered an order, making a finding under Rule 304(a) that no just cause exists to delay enforcement or appeal of the final dismissal of the University defendants.

On February 18, 2009, plaintiff filed a notice of appeal in compliance with Supreme Court Rules 303 and 304(a) (Official Reports Advance Sheet No. 15 (July 16, 2008), R. 303,

- 4 -

eff. May 30 2008 (corrected eff. June 4, 2008); 210 Ill. 2d R. 304(a)). The notice stated plaintiff was appealing the November 19, 2008, dismissal order and "the [o]rder denying [p]laintiff's [m]otion to [r]econsider and for [l]eave to [f]ile [t]hird[-a]mended [c]omplaint entered on December 15, 2008."

## II. ANALYSIS

### A. Sovereign Immunity

Section 2-619(a)(1) of the Procedure Code (735 ILCS 5/2-619(a)(1) (West 2008)) provides for dismissal of a cause of action due to the trial court's lack of subject-matter jurisdiction. Siakpere v. City of Chicago, 374 Ill. App. 3d 1079, 1081, 872 N.E.2d 495, 497 (2007). The University defendants asserted the trial court lacked subject-matter jurisdiction over the counts against them because the Court of Claims had exclusive jurisdiction under the sovereign-immunity doctrine.

With a section 2-619 motion to dismiss, the movant admits the legal sufficiency of the plaintiff's complaint but raises an affirmative defense or other matter that avoids or defeats the plaintiff's claim. DeLuna v. Burciaga, 223 Ill. 2d 49, 59, 857 N.E.2d 229, 236 (2006). "In ruling on such a motion, the court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." Melena v.

- 5 -

Anheuser-Busch, Inc., 219 Ill. 2d 135, 141, 847 N.E.2d 99, 103 (2006).  A section 2-619 motion presents a question of law, and thus our review of the trial court's ruling on the motion is de novo.  DeLuna, 223 Ill. 2d at 59, 857 N.E.2d at 236.

"The Illinois Constitution of 1970 abolished the doctrine of sovereign immunity '[e]xcept as the General Assembly may provide by law.'"  PHL, Inc. v. Pullman Bank & Trust Co., 216 Ill. 2d 250, 259-60, 836 N.E.2d 351, 356 (2005), quoting Ill. Const. 1970, art. XIII, §4.  Exercising its constitutional authority, the General Assembly reestablished the doctrine in the State Lawsuit Immunity Act (Immunity Act) (745 ILCS 5/0.01 through 1.5 (West 2008)).  PHL, 216 Ill. 2d at 260, 836 N.E.2d at 356.  Section 1 of the Immunity Act (745 ILCS 5/1 (West Supp. 2007)) prohibits the State of Illinois from being a party to a lawsuit except for the enumerated exceptions, one of which is the Court of Claims Act (705 ILCS 505/1 through 29 (West 2008)).  The Court of Claims Act establishes the Court of Claims as the forum for claims against the state and provides, inter alia, the "'court shall have exclusive jurisdiction to hear and determine *** [a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit.'"  Loman v. Freeman, 229 Ill. 2d 104, 112, 890 N.E.2d 446, 453 (2008), quoting 705 ILCS 505/8(d) (West 2004).

- 6 -

The determination of whether an action is one against the State does not depend "on the formal identification of the parties but rather on the issues involved and the relief sought." Healy v. Vaupel, 133 Ill. 2d 295, 308, 549 N.E.2d 1240, 1247 (1990).  Thus, sovereign immunity cannot be avoided "'by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested.'" Healy, 133 Ill. 2d at 308, 549 N.E.2d at 1247, quoting Sass v. Kramer, 72 Ill. 2d 485, 491, 381 N.E.2d 975, 977 (1978).  We note that for the first time in his reply brief plaintiff contends the University defendants failed to show with their motion to dismiss that they are state employees.  Under Illinois Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)), an appellant forfeits points not raised in the initial brief and cannot argue them for the first time in the reply brief.  Burlington Northern & Santa Fe Ry. Co. v. ABC-NACO, 389 Ill. App. 3d 691, 717, 906 N.E.2d 83, 105 (2009).  Thus, we find plaintiff has forfeited this argument.

Our supreme court has found an action is actually against the State when the following are present:

> "'(1) no allegations that an agent or em-
> ployee of the State acted beyond the scope of
> his authority through wrongful acts; (2) the
> duty alleged to have been breached was not

- 7 -

owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.'" Healy, 133 Ill. 2d at 309, 549 N.E.2d at 1247, quoting Robb v. Sutton, 147 Ill. App. 3d 710, 716, 498 N.E.2d 267, 272 (1986).

Additionally, if the three Robb criteria are not satisfied, "a court must consider the relief sought--that is, whether '"a judgment for the plaintiff could operate to control the actions of the [s]tate or subject it to liability."'" (Emphasis omitted.) Jackson v. Alverez, 358 Ill. App. 3d 555, 560, 831 N.E.2d 1159, 1164 (2005), quoting Jinkins v. Lee, 209 Ill. 2d 320, 330, 807 N.E.2d 411, 418 (2004), quoting Currie v. Lao, 148 Ill. 2d 151, 158, 592 N.E.2d 977, 980 (1992). Here, plaintiff appears to argue the first and second Robb criteria were not satisfied.

### 1. Scope of Authority

Plaintiff asserts he properly alleged the University defendants exceeded the scope of their authority.

Clearly, no state employee possesses the authority to commit a tort. Jackson, 358 Ill. App. 3d at 561, 831 N.E.2d at 1164. Sovereign immunity as to tort actions would be eviscerated if a simple reference to a tort could defeat the doctrine.

- 8 -

Jackson, 358 Ill. App. 3d at 561, 831 N.E.2d at 1164. Since sovereign immunity presumes the possibility a state employee committed a legal wrong and "legal wrongs are, per se, unauthorized," the relevant question is not whether the employee had authority to commit the alleged legal wrong. Jackson, 358 Ill. App. 3d at 561, 831 N.E.2d at 1164. Rather, "the question is whether the employee intended to perform some function within the scope of his or her authority when committing the legal wrong." Jackson, 358 Ill. App. 3d at 561, 831 N.E.2d at 1164.

As the University defendants note, an employee who breaks workplace rules, performs his or her duties with willful and wanton indifference, or even violates a statute does not necessarily act outside the scope of his or her state employment. Jackson, 358 Ill. App. 3d at 561, 831 N.E.2d at 1164; Welch v. Illinois Supreme Court, 322 Ill. App. 3d 345, 352, 751 N.E.2d 1187, 1194 (2001). An employee's actions are considered within the scope of employment where the alleged facts are consistent with an intent to further the state's business. See Welch, 322 Ill. App. 3d at 354, 751 N.E.2d at 1195. This court has found state employees did not exceed the scope of their authority where the plaintiff did not allege specific facts demonstrating the defendants harbored any personal animosity toward the plaintiff or indicating they committed the alleged acts for reasons other than what the defendants perceived to be in the best interests of

- 9 -

the state agency.  <u>Nikelly v. Stubing</u>, 204 Ill. App. 3d 870, 876, 562 N.E.2d 360, 364 (1990).  In his reply brief, plaintiff does not respond to the aforementioned authority.

### a. Trainers

Plaintiff's second-amended complaint suggests the Trainers' jobs were to practice injury prevention, emergency care, and physical reconditioning on plaintiff and coordinate their care of plaintiff with plaintiff's physician and coaches. Plaintiff alleged the Trainers (1) advised plaintiff they were communicating with Dr. Rudert with regard to plaintiff's neuro- logical problems; (2) did not fully and accurately describe and/or failed to describe plaintiff's neurological problems to Dr. Rudert; and (3) failed to keep an accurate historical record of the frequency, nature, and extent of plaintiff's neurological problems.  By acting in the aforesaid manner, the Trainers acted independently of Dr. Rudert as they neither regularly coordinated with him nor acted under his direction.  Accordingly, plaintiff contended the Trainers exceeded the scope of their authority under their license.  Plaintiff also contended the Trainers exceeded their authority as NCAA trainers by (1) substituting their judgment regarding the severity of plaintiff's injuries as they did not consult with the appropriate team physician or refer plaintiff to a physician for further evaluation and (2) encourag- ing plaintiff to continue playing after experiencing stingers

- 10 -

without assuring a physician had appropriately evaluated him.

Plaintiff argues the Trainers exceeded the scope of their license as set forth in section 3 of the Illinois Athletic Trainers Practice Act (Athletic Trainers Act) (225 ILCS 5/3 (West 2008)). As stated earlier, an employee's violation of a statute does not necessarily mean the employee acted outside the scope of his or her state employment. Welch, 322 Ill. App. 3d at 352, 751 N.E.2d at 1194. Here, the Trainers' state employment was as athletic trainers for a university football team. The alleged facts show the Trainers committed the alleged negligence while coordinating and providing care to plaintiff in his capacity as a student-athlete on the football team. Specifically, the alleged facts in support of the outside-the-scope-of-authority assertion argue negligence based on the Trainers' failure to perform the functions set forth in section 3 of the Athletic Trainers Act (225 ILCS 5/3 (West 2008)). Moreover, the alleged facts do not suggest the Trainers' actions were inconsistent with an intent to further the university's interests or the Trainers acted for reasons other than what they perceived to be in the state university football team's best interests.

Accordingly, we find plaintiff did not plead the Trainers acted outside the scope of their authority, and thus the first Robb criterion was met as to the Trainers.

b. Coaches

Plaintiff's second-amended complaint contends the Coaches' jobs were (1) to monitor, coach, and instruct plaintiff during football practices and games and, (2) in coordination with plaintiff's physician and athletic trainers, evaluate and assess plaintiff's physical capacity to safely engage in the physical activities required by football. Plaintiff alleged the Coaches (1) advised plaintiff they were communicating with Dr. Rudert with regard to plaintiff's neurological problems; (2) did not fully and accurately describe plaintiff's neurological problems to Dr. Rudert; and (3) failed to keep an accurate historical record of the frequency, nature, and extent of plaintiff's neurological problems. By acting in the aforesaid manner, the Coaches acted independently of Dr. Rudert as they did not regularly coordinate with him or act under his discretion with respect to plaintiff's health and safety. Accordingly, plaintiff contended the Coaches exceeded the scope of their authority as coaches and as NCAA coaches. Additionally, like with the Trainers, plaintiff contended the Coaches exceeded their authority as NCAA coaches by (1) substituting their judgment regarding the severity of plaintiff's injuries as they did not consult with the appropriate team physician or refer plaintiff to a physician for further evaluation and (2) encouraging plaintiff to continue playing after experiencing stingers without assuring a physician had appropriately evaluated him.

- 12 -

Plaintiff contends the Coaches exceeded the scope of their authority under NCAA guidelines by assuming the role of medical professionals. We note plaintiff does not allege the State required the Coaches to comply with the policy and regulations of the private association. Moreover, an employee's violation of policies and/or regulations does not necessarily mean the employee acted outside the scope of his or her state employment. Welch, 322 Ill. App. 3d at 352, 751 N.E.2d at 1194. Here, the Coaches' state employment was to coach a university football team. The pleaded facts allege the Coaches committed the alleged negligence while coaching plaintiff, a student-athlete on the football team. The alleged facts do not suggest the Coaches' actions were inconsistent with an intent to further the university's interests or the Coaches acted for reasons other than what they perceived to be in the state university football team's best interests.

Accordingly, we find plaintiff failed to allege specific facts demonstrating the University defendants exceeded their authority, and thus the first Robb criterion was met as to the Coaches.

### 2. Source of Duty

Our supreme court has explained the analysis for the second Robb criterion as follows:

"Where the charged act of negligence arose

- 13 -

out of the State employee's breach of a duty that is imposed on him solely by virtue of his State employment, sovereign immunity will bar maintenance of the action in circuit court.  [Citations.]  Conversely, where the employee is charged with breaching a duty imposed on him independently of his State employment, sovereign immunity will not attach and a negligence claim may be maintained against him in circuit court."  (Emphasis omitted.)  Currie, 148 Ill. 2d at 159, 592 N.E.2d at 980.

Illinois courts have found a duty to be an independent one in several different situations.  First, an independent duty exists when the duty is a professional duty owed by every member of that profession.  Grimes v. Saikley, 388 Ill. App. 3d 802, 814, 904 N.E.2d 183, 192 (2009).  In the context of sovereign immunity, our supreme court has recognized a professional duty of care was owed by a physician (Jinkins, 209 Ill. 2d at 332, 807 N.E.2d at 419, citing Madden v. Kuehn, 56 Ill. App. 3d 997, 1001, 372 N.E.2d 1131, 1134 (1978)), a psychiatrist and a licensed clinical professional counselor (Jinkins, 209 Ill. 2d at 334-36, 807 N.E.2d at 420-21), and a veterinarian (Loman, 229 Ill. 2d at 119, 890 N.E.2d at 457).  Additionally, the First District has found

an independent professional duty was owed by an attorney. Johnson v. Halloran, 312 Ill. App. 3d 695, 700, 728 N.E.2d 490, 494 (2000). However, the Second District has found no professional duty existed requiring kitchen supervisors to keep kitchen staff members safe. Brandon v. Bonell, 368 Ill. App. 3d 492, 508, 858 N.E.2d 465, 482 (2006).

Second, an independent duty exists when the duty arises from the person's general status regardless of one's employment, i.e., a person's status as a driver of a vehicle on a state roadway imposes a duty to drive safely. Grimes, 388 Ill. App. 3d at 814, 904 N.E.2d at 192. However, sovereign immunity will apply when "'the conduct related to a state employee's independent duty is unique to his state employment such that a suit challenging this conduct could affect state policies or control its actions.'" Grimes, 388 Ill. App. 3d at 814, 904 N.E.2d at 192, quoting Brandon, 368 Ill. App. 3d at 506, 858 N.E.2d at 481. For example, an independent duty did not exist when a police officer drove in a manner unique to police officers in response to an emergency call that was part of the officer's normal and official duties. Kawaguchi v. Gainer, 361 Ill. App. 3d 229, 249, 835 N.E.2d 435, 451 (2005).

Third, an independent duty exists where a statute imposes specific requirements on all people regardless of their employment. Grimes, 388 Ill. App. 3d at 814, 904 N.E.2d at 193.

- 15 -

In Fritz v. Johnston, 209 Ill. 2d 302, 314, 807 N.E.2d 461, 469 (2004), the supreme court found the Illinois Criminal Code imposed an independent duty not to make false accusations of criminal conduct.  However, the Fritz court recognized that, where a statute proscribes the actions of state employees and does not apply to the public as a whole, an independent duty does not arise.  Fritz, 209 Ill. 2d at 314, 807 N.E.2d at 469.  This court recently found such a situation with regard to a public administrator whose duties arose under section 13-4 of the Probate Act of 1975 (755 ILCS 5/13-4 (West 2006)) and were imposed on him solely because he was a state employee or agent.  Grimes, 388 Ill. App. 3d at 815-16, 904 N.E.2d at 193; see also Brandon, 368 Ill. App. 3d at 508, 858 N.E.2d at 482 (finding no independent duty where the statute at issue imposed a duty solely on the Department of Corrections).

Plaintiff appears to be asserting an independent professional duty exists for both athletic trainers and coaches as courts have found for doctors, lawyers, and veterinarians.  In asserting no independent duty exists, the University defendants rely on the supreme court's decision in Healy, 133 Ill. 2d at 313, 549 N.E.2d at 1249, where it found the duty owed by the university athletic directors, gymnastics coach, and team trainer to a student on the university gymnastics team did not have a source outside the defendants' employment status.

- 16 -

In _Healy_, 133 Ill. 2d at 311-12, 549 N.E.2d at 1248-49, the plaintiff argued the court should follow _Madden_, 56 Ill. App. 3d at 1001, 372 N.E.2d at 1134, where, as stated earlier, the court held the duty breached in a negligence action against a state-employed physician was the one every physician owed a patient. The plaintiff contended _Madden_ should be followed in that matter because "the duty of care owed by the defendants was no greater than, and no different from, the duty that would be owed to participants in a privately run gymnastics program." _Healy_, 133 Ill. 2d at 312, 549 N.E.2d at 1249.

The _Healy_ court rejected the plaintiff's argument. It noted that "[e]ssential to the court's holding in _Madden_ was the view that the duty of care owed by the physician arose independently of his status as an employee of the State; that conclusion may be said to rest on the special nature of the doctor-patient relationship." _Healy_, 133 Ill. 2d at 313, 549 N.E.2d at 1249. The court found that conclusion could not be reached in the case before it and noted the relationship between the plaintiff and the defendants did not have a source outside the employment status of the defendants. "Whatever duty was owed by the defendants to the plaintiff existed because of the plaintiff's status as a student and her participation in university-sponsored activities." _Healy_, 133 Ill. 2d at 313, 549 N.E.2d at 1249.

Plaintiff contends _Healy_ is inconsistent with the

supreme court's recent decision in <u>Loman</u>, 229 Ill. 2d 104, 890 N.E.2d 446. We disagree with any suggestion <u>Healy</u> is no longer good law after <u>Loman</u>. See <u>Loman</u>, 229 Ill. 2d at 112, 890 N.E.2d at 453 (citing <u>Healy</u> in support of the statement the rules governing the inquiry of whether a particular tort action is one "'against the State'" are well established).

### a. Trainers

As to the Trainers, we found that, while <u>Healy</u> is still good law, the facts of this case are distinguishable from those in <u>Healy</u>.

Here, plaintiff's complaint asserts the Trainers were licensed athletic trainers and alleges the Trainers breached duties imposed by their license. In describing the plaintiff's complaint in <u>Healy</u>, the supreme court neither indicates the university athletic trainer was licensed nor alleges the athletic trainer breached a duty imposed by a license. See <u>Healy</u>, 133 Ill. 2d at 310-11, 549 N.E.2d at 1247-48. Moreover, we note the athletic trainer in <u>Healy</u> could not have been licensed at the time of the plaintiff's accident (October 23, 1985) under the Athletic Trainers Act because that act did not become effective until January 1, 1986. See Pub. Act 84-1080, §1, eff. January 1, 1986 (1985 Ill. Laws 7129, 7130). Accordingly, the complaint at issue requires an analysis of whether the Athletic Trainers Act

establishes an independent professional duty.

This court rendered the appellate decision in Loman. See Loman v. Freeman, 375 Ill. App. 3d 445, 874 N.E.2d 542 (2006). While the veterinarian in Loman was not subject to a licensing act, we still analyzed a duty arising from a licensing statute. Loman, 375 Ill. App. 3d at 452-53, 874 N.E.2d at 548. That analysis serves as a guide in this case.

In Loman, 375 Ill. App. 3d at 452, 874 N.E.2d at 548, we noted the legislature's use of the term "malpractice" in the Veterinary Medicine and Surgery Practice Act of 1994 (Veterinary Practice Act) (see 225 ILCS 115/25(1)(F) (West 2000)) implied a set of professional standards applicable to all veterinarians. We explained as follows:

> "'Malpractice' is '[a]n instance of negli-
> gence or incompetence on the part of a pro-
> fessional.' [Citation.] A 'professional' is
> a member of 'a learned profession.' [Cita-
> tion.] A learned profession implies the
> existence of a body of learning relevant to
> that profession as a whole--the 'standard of
> care' ***." Loman, 375 Ill. App. 3d at 452-
> 53, 874 N.E.2d at 548.

Like the Veterinary Practice Act, the Athletic Trainers Act provides the Department of Professional Regulations may take

various forms of disciplinary action for, *inter alia*, "[m]alpractice." 225 ILCS 5/16(F) (West 2008). Other sections of the Athletic Trainers Act indicate athletic training is a "learned profession." In section 1 of the act, the legislature declares (1) athletic training "affects the public health, welfare, and safety and its regulation and control [are] in the public interest" and (2) "only qualified persons [are] permitted to hold themselves out to the public as athletic trainers in the State of Illinois." 225 ILCS 5/1 (West 2008). Moreover, section 9 of the Athletic Trainers Act (225 ILCS 5/9 (West 2008)) requires a licensee to, *inter alia*, have graduated from both an accredited curriculum in athletic training and a four-year accredited college or university as well as passed an examination determining one's fitness to practice as an athletic trainer (unless an exception to the examination requirement applies).

Additionally, we note that, in defining "'[l]icensed athletic trainer,'" the legislature's language again indicates a standard of care. See 225 ILCS 5/3(4) (West 2008). Section 3(4) of the Athletic Trainers Act (225 ILCS 5/3(4) (West 2008)) states a licensed athletic trainer, under the direction of a physician, "carries out the practice of prevention/emergency care or physical reconditioning of injuries incurred by athletes." The section further contains a nonexclusive list of specific duties of an athletic trainer, including the "[p]rovision of on-site

injury care and evaluation as well as appropriate transportation, follow-up treatment[,] and rehabilitation as necessary for all injuries sustained by athletes in the program." 225 ILCS 5/3(4)(H) (West 2008). Last, the section permits those licensed to practice athletic training to use modalities such as electricity and "mechanical devices related to care and reconditioning." 225 ILCS 5/3(4) (West 2008).

Accordingly, we find the Athletic Trainers Act demonstrates the existence of a standard of care for athletic trainers, and thus a duty of care independent of state employment exists for athletic trainers. In his second-amended complaint, plaintiff asserts the Trainers breached that independent duty of care, and thus the trial court erred by dismissing the count against the Trainers.

### b. Coaches

Regarding the Coaches, plaintiff notes the NCAA is a national organization that governs the conduct of its members, including coaches. Plaintiff asserts the Coaches' independent professional duty arose from the common law and the Restatement (Second) of Torts. However, plaintiff provides neither citation to authority nor analysis in support of his assertion in violation of Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)). Plaintiff's bare contentions are insufficient for us to distinguish the supreme court's decision in Healy where it specifically found

coaches of a state university team did not have a professional duty of care like a physician.

Thus, we conclude plaintiff has failed to show his second-amended complaint sets forth an independent duty of care for the Coaches. We note plaintiff has not challenged the applicability of the third Robb criterion, and thus we find the trial court properly found all three Robb criteria were satisfied and sovereign immunity applies to the Coaches.

### B. Third-Amended Complaint

Plaintiff also contends the trial court erred by denying him leave to file a third-amended complaint.

Whether to allow a plaintiff to amend a complaint lies within the trial court's sound discretion, and absent an abuse of that discretion, this court will not overturn the trial court's decision on review. Compton v. Country Mutual Insurance Co., 382 Ill. App. 3d 323, 331, 887 N.E.2d 878, 886 (2008). A reviewing court will find an abuse of discretion only where no reasonable person would take the view adopted by the trial court. Compton, 382 Ill. App. 3d at 331-32, 887 N.E.2d at 886-87.

Illinois law maintains a liberal policy of allowing parties to amend their pleadings so parties may fully present their alleged cause or causes of action. Grove v. Carle Foundation Hospital, 364 Ill. App. 3d 412, 417, 846 N.E.2d 153, 157 (2006). However, plaintiffs do not have an absolute right to

- 22 -

amend their complaint.  Grove, 364 Ill. App. 3d at 417, 846
N.E.2d at 158.  In determining whether an amendment to a com-
plaint should be allowed, a court generally considers the follow-
ing four factors:

> "(1) whether the proposed amendment would
> cure a defect in the pleading, (2) whether
> the proposed amendment would surprise or
> prejudice the opposing party, (3) whether the
> proposed amendment was timely filed, and (4)
> whether the moving party had previous oppor-
> tunities to amend the complaint."  Grove, 364
> Ill. App. 3d at 417-18, 846 N.E.2d at 158.

Here, plaintiff made an oral motion for leave to file a
third-amended complaint, a motion to reconsider the denial of the
motion for leave, and then another written motion for leave to
file a third-amended complaint.  A proposed written amendment was
not tendered until the written motion.  However, we note plain-
tiff has not listed the order denying the written motion for
leave to file a third-amended complaint in his notice of appeal,
and thus that judgment is not before us.  People v. Smith, 228
Ill. 2d 95, 104, 885 N.E.2d 1053, 1058 (2008) (stating a notice
of appeal confers jurisdiction on reviewing court to consider
only the judgments or parts thereof specified in the notice of
appeal).  Accordingly, just the denial of the oral motion and the

reconsideration motion are before this court. Thus, the trial court did not have a proposed amendment before it when it ruled on the request for leave to file a third-amended complaint.

A plaintiff's failure to tender a proposed complaint significantly diminishes a court's ability to analyze the appropriate factors for determining whether leave should be granted as the existence of a proposed amendment is implicit in the first three factors. See Ignarski v. Norbut, 271 Ill. App. 3d 522, 532, 648 N.E.2d 285, 293 (1995). In fact, this court has held a plaintiff's failure to tender the proposed amendment to the trial court forfeits review of the trial court's decision. Illinois Non-Profit Risk Management Ass'n v. Human Service Center of Southern Metro-East, 378 Ill. App. 3d 713, 726, 884 N.E.2d 700, 712 (2008). Additionally, courts have found a presumption does not exist that a proposed amendment will be a proper one and it is not error to refuse to grant leave to amend where the party has not provided a basis to determine whether the amendment will be sufficient to state a cause of action. People ex rel. Scott v. Cardet International, Inc., 24 Ill. App. 3d 740, 748, 321 N.E.2d 386, 393 (1974); Urfer v. Country Mutual Insurance Co., 60 Ill. App. 3d 469, 474, 376 N.E.2d 1073, 1077 (1978).

Assuming arguendo the third-amended complaint was before the trial court when it ruled on the motions, reversal is still not warranted as to the Coaches. The third-amended com-

plaint does not cure the defects that we have already addressed regarding those defendants. As stated earlier, an allegation of willful and wanton conduct does not itself demonstrate the act was outside the scope of state employment. <u>Jackson</u>, 358 Ill. App. 3d at 561, 831 N.E.2d at 1164.

Thus, we conclude the trial court did not abuse its discretion by denying plaintiff's motion for leave to file a third-amended complaint.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's dismissal of the count against the Coaches, reverse the court's dismissal of the count against the Trainers, and remand for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded with directions.

APPLETON and POPE, JJ., concur.