2023 IL App (1st) 220245

SIXTH DIVISION
June 9, 2023

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-22-0245

| | | |
|---|---|---|
| DARREN GREEN SR., Individually and as Special Administrator for the Estate of Darren Green Jr., Deceased, | ) ) ) | |
| | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2020 L 010860 |
| | ) | |
| THE STATE OF ILLINOIS and CHRISTOPHER EHLERS AND ALEC McCARTHY, Illinois State Troopers, | ) ) ) | Honorable Gerald Cleary, Judge Presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Oden Johnson and Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1     Darren Green Sr. sued the State of Illinois and two Illinois state troopers, Christopher

Ehlers and Alec McCarthy, following the death of his son, Darren Green Jr., who was shot and

killed during a traffic stop initiated by the two troopers. Defendants moved to dismiss the suit,

arguing that sovereign immunity barred the claims asserted in Mr. Green Sr.'s complaint. The

circuit court granted the motion. For the reasons that follow, we affirm in part and reverse in part.

¶ 2                                    I. BACKGROUND

¶ 3     On October 13, 2020, Darren Green Sr. filed a complaint against the State of Illinois and

two Illinois state troopers (referred to in this initial complaint as "Troopers John Doe and Richard Roe"). In the complaint, Mr. Green Sr. alleged that, on October 7, 2020, his son, Darren Green Jr., was driving in a vehicle with three other individuals in Harvey, Illinois, when the vehicle was pulled over by Troopers Doe and Roe for petty equipment violations. During the traffic stop, the troopers recovered and took possession of a firearm that Trooper Doe used to shoot Mr. Green Jr. in the back of the head. Mr. Green Sr. further alleged that Trooper Roe "assisted in said shooting" and that at the time the recovered weapon was fired, Mr. Green Jr. was not in possession of a weapon and posed no threat to the officers. Mr. Green Jr. died from the injury.

¶ 4    Mr. Green Sr. asserted claims of wrongful death, intentional infliction of emotional distress, and excessive force, as well as a survival action. He also sought indemnification from the State of Illinois, as the "[d]efendant Troopers committed the acts alleged *** under color of law and in the scope of their employment as employees of the State of Illinois."

¶ 5    Mr. Green Sr. amended his complaint twice. The second amended complaint, filed on June 2, 2021, is the operative complaint in this appeal. In it, Mr. Green Sr. added three additional counts of wrongful death and identified Troopers Doe and Roe as Christopher Ehlers and Alec McCarthy.

¶ 6    The State moved to dismiss Mr. Green Sr.'s second amended complaint on June 22, 2021, pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2020)), arguing that the circuit court lacked subject matter jurisdiction over the claims asserted in the complaint due to sovereign immunity. Mr. Green Sr. filed a response on September 16, 2021, asserting that sovereign immunity did not bar his claims because "the duty not to commit murder" is an independent duty arising from the criminal code, rather than from defendants' status as state employees.

¶ 7    On October 13, 2021, the circuit court granted the State's motion to dismiss. The court

noted in its ruling that Mr. Green Sr. had "relie[d] heavily on the allegation that the Troopers murdered the plaintiff's decedent and that the Troopers had a duty independent of their employment with the State not to commit murder," but that these assertions were not well-pleaded because they were conclusory and unsupported by specific facts. In addition to rejecting this "source of the duty" argument, the court also cited *Management Ass'n of Illinois, Inc. v. Board of Regents of Northern Illinois University*, 248 Ill. App. 3d 599 (1993), for the proposition that an action is "against the state" for the purposes of sovereign immunity when a judgment for the plaintiff could operate either to control the actions of the state or subject it to liability. Applying this standard, the court found that "it is clear that the plaintiff is seeking to subject the State to liability based on the claims for *respondeat superior* liability and the claim for indemnification." Additionally, the court noted, "if this case were to proceed in the Court, the plaintiff's claims have the potential to control the actions of the State by restraining the manner in which the Illinois State Police curb vehicles and conduct searches." Upon concluding that sovereign immunity applied and that it lacked subject matter jurisdiction over the claims asserted, the court dismissed the complaint with prejudice and stated that "the plaintiff is given leave to re-file the case in the Illinois Court of Claims."

¶ 8    Mr. Green Sr. filed a motion to reconsider on November 10, 2021, which was fully briefed. That same day, he filed a motion for leave to file a third amended complaint. He did not attach a proposed complaint to his motion. The circuit court granted Mr. Green Sr.'s timely motion to reconsider on January 21, 2022, on the basis that it had erred in its prior dismissal order by applying the "source of the duty" analysis, which is only relevant where the state is not named as a party. The court explained that, in contrast to all the cases cited by Mr. Green Sr. invoking the "source of the duty" test, here, there was no dispute that the state was the true party in interest in the suit

because "the plaintiff names the State as a defendant, alleges that the troopers were acting in the course and scope of their employment with the State, alleges that the State is liable under the theory of *respondeat superior* and the plaintiff demands damages from the State." As it was clear to the court that the complaint was, on its face, one brought against the state, the court concluded that it lacked subject matter jurisdiction over the case and, once again, dismissed the complaint with prejudice.

¶ 9    In a separate order also filed on January 21, 2022, the court determined that it "likewise lack[ed] subject matter jurisdiction to grant the plaintiff's motion to amend the complaint." Mr. Green Sr. then moved for reconsideration of the court's denial of his motion for leave to amend, attaching for the first time a proposed third amended complaint. The court denied the motion, and this appeal followed.

¶ 10                              II. JURISDICTION

¶ 11    On February 18, 2022, Mr. Green Sr. filed a notice of appeal from the court's October 13, 2021, and January 21, 2022, orders dismissing his complaint with prejudice and denying him leave to amend. He amended his notice of appeal on March 2, 2022, to incorporate the court's February 23, 2022, order denying his motion to reconsider the denial of leave to amend. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 12                              III. ANALYSIS

¶ 13    Mr. Green Sr. argues on appeal that the circuit court erred in dismissing his complaint under section 2-619 of the Code upon determining that sovereign immunity barred his claims. Sovereign immunity does not apply as to his claims against Troopers Ehlers and McCarthy, he

asserts, because he alleged that their conduct "constituted murder, was intentional, extreme and outrageous, beyond all bounds of human decency, a breach of their duty to the public, in violation of Illinois's law, and in excess of their authority." Mr. Green Sr. also argues that the circuit court abused its discretion when it denied him leave to file a third amended complaint curing the defects identified by the circuit court in its dismissal orders. We address each argument in turn.

¶ 14                    A. Dismissal Under Section 2-619

¶ 15    The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proven issues of fact at the outset of litigation. *Dratewska-Zator v. Rutherford*, 2013 IL App (1st) 122699, ¶ 15. The movant of a section 2-619 motion admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter that defeats the claim, such that section 2-619 is an appropriate method to raise a sovereign immunity defense. *Leetaru v. Board of Trustees of the University of Illinois*, 2015 IL 117485, ¶ 40.

¶ 16    In filing a section 2-619 motion, defendants in this case accepted that Mr. Green Sr. had a legally cognizable claim, but they argued he was pursuing that claim before the wrong tribunal. The circuit court agreed and dismissed Mr. Green Sr.'s suit, determining that, due to the principles of sovereign immunity, it lacked subject matter jurisdiction and that the only court authorized to hear his claims was the Illinois Court of Claims.

¶ 17    In reviewing a section 2-619 dismissal, we construe all well-pleaded facts as true and draw all reasonable inferences that may arise from those facts in favor of the nonmoving party. *Id.* ¶ 4. However, a court cannot accept as true conclusions of law and conclusory factual allegations unsupported by specific facts. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. Dismissal is proper under this section if the court "does not have jurisdiction of the subject matter of the action." 735 ILCS 5/2-619(a)(1) (West 2020). We review a circuit court's grant of a

motion to dismiss based on a lack of subject matter jurisdiction *de novo*. *Leetaru*, 2015 IL 117485, ¶ 41.

¶ 18    Sovereign immunity is a common law doctrine that protects the government from being sued without its consent. *Jackson v. Alverez*, 358 Ill. App. 3d 555, 559 (2005). The use of sovereign immunity in Illinois courts is governed by the State Lawsuit Immunity Act (Immunity Act) (745 ILCS 5/1 (West 2020)), which resuscitated the doctrine after it was briefly abolished with the adoption of the Illinois Constitution of 1970. See Ill. Const. 1970, art. XIII, § 4; *Parmar v. Madigan*, 2018 IL 122265, ¶ 19. Section 1 of the Immunity Act states that "[e]xcept as provided in *** the Court of Claims Act *** the State of Illinois *shall not* be made a defendant or party in any court." (Emphasis added.) 745 ILCS 5/1 (West 2020). The Court of Claims Act, in turn, grants the Illinois Court of Claims exclusive jurisdiction over particular categories of lawsuits against the state, including "[a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit." 705 ILCS 505/8(d) (West 2022).

¶ 19    As our supreme court explained in *People ex rel. Manning v. Nickerson*, 184 Ill. 2d 245, 249 (1998), sovereign immunity "is not about fairness." It is about jurisdiction, and with regard to tort claims, "the legislature's directive could not be more clear: tort claims against the state must be brought in the Court of Claims." *Id.* The difficulty, however, is that the doctrine is not confined exclusively to actions that name the State of Illinois as a defendant. It will also operate to protect individual state employees named as defendants where the impact of the suit "makes it, for all practical purposes, a suit against the State." *Welch v. Illinois Supreme Court*, 322 Ill. App. 3d 345, 350-51 (2001). But when exactly is a suit against an individual in reality a suit against the state such that sovereign immunity applies? Attempts to grapple with this question have led to the

development of a considerable and not-always-consistent body of case law. See *Leetaru*, 2015 IL 117485, ¶ 73 (Burke, J., dissenting, joined by Freeman and Theis, JJ.)

¶ 20    As a general matter, the determination of whether an action against an individual is one against the state depends upon the issues involved and the relief sought and not simply the formal identification of the parties. *Parmar*, 2018 IL 122265, ¶ 21. In arguing that sovereign immunity does not bar his claims against the state troopers in this case, Mr. Green Sr. relies on two lines of cases dealing with suits against state employees. The first line of cases involves what is most often referred to as the "officer suit exception" to sovereign immunity. In the second line of cases, courts have applied the three-part test set forth in *Healy v. Vaupel*, 133 Ill. 2d. 295, 308-09 (1990). For the following reasons, we conclude that the allegations in the second amended complaint fail to bring this claim within either of these exceptions to sovereign immunity.

¶ 21                              1. The Officer Suit Exception

¶ 22    Our supreme court has recognized that a state officer will not be protected by sovereign immunity if the plaintiff alleges that "the state officer's conduct violates statutory or constitutional law or is in excess of his or her authority." *Parmar*, 2018 IL 122265, ¶ 22. This exception is rooted in the principle, originating in federal courts, that conduct undertaken by a state officer without legal authority strips the officer of his or her official status. *PHL, Inc. v. Pullman Bank & Trust Co.*, 216 Ill. 2d 250, 261 (2005). There is, however, one crucial limitation to the officer suit exception: it is only available in cases where the plaintiffs are seeking *prospective* relief, typically in the form of an injunction. Indeed, this exception "is interchangeably styled the 'officer suit exception' or the 'prospective injunctive relief exception,' " which is perhaps a more clarifying name. *Giovenco-Pappas v. Berauer*, 2020 IL App (1st) 190904, ¶ 36. As our supreme court made clear in *Parmar*, 2018 IL 122265, ¶ 26, "a complaint seeking damages for a past wrong does not

fall within the officer suit exception to sovereign immunity.”

¶ 23    In his briefs, Mr. Green Sr. relies on language from *Leetaru* and *Parmar*, cases which both involved the officer suit exception. But because Mr. Green Sr. is seeking damages for a past wrong, the officer suit exception is not available to him, and he cannot avoid sovereign immunity merely by alleging that the conduct of the state troopers violated statutory or constitutional law. To show that his claims against the defendant troopers are not substantively against the state, Mr. Green Sr. must instead rely on the more complicated analysis set forth in the other line of sovereign immunity cases involving the *Healy* factors.

¶ 24                                2. The *Healy* Factors

¶ 25    Under the three-part *Healy* test, claims for damages against state employees are considered claims against the state, and sovereign immunity will therefore apply, where (1) there are no allegations that the employee of the state acted beyond the scope of his or her authority through wrongful acts, (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of state employment, and (3) the complained-of actions involve matters ordinarily within that employee’s normal and official functions of the state. *Healy*, 133 Ill. 2d. at 308-09. We look to each of these factors in reviewing the allegations of Mr. Green Sr.’s complaint.

¶ 26                                a. Scope of Authority

¶ 27    To show that a state employee acted beyond the scope of their authority, it is not sufficient merely to allege, in conclusory terms, that a defendant did something unlawful. As we have repeatedly held, “[a] State employee’s violation of policy, regulation, or even statute does not necessarily avert the application of sovereign immunity.” *Welch*, 322 Ill. App. 3d at 352; see also *Grainger v. Harrah’s Casino*, 2014 IL App (3d) 130029, ¶ 34 (“a state employee does not act outside the scope of his authority (thereby precluding the application of sovereign immunity)

merely by committing a tort."). In *Jackson*, 358 Ill. App. 3d at 561, we explained that "[b]ecause sovereign immunity presupposes the possibility of a legal wrong by a state employee [citation], and legal wrongs are, *per se*, unauthorized, the relevant question cannot be whether the employee had authority to commit the legal wrong," but rather "whether the employee intended to perform some function within the scope of his or her authority when committing the legal wrong." Requiring this heightened level of specificity is necessary to prevent this exception from swallowing the rule.

¶ 28    In his second amended complaint, while Mr. Green Sr. repeatedly described the actions of Troopers Ehlers and McCarthy as willful and wanton and without lawful justification, he did not allege any specific facts supporting an inference that the troopers were doing something other than attempting to perform some function within the scope of their authority when the injury occurred. As the circuit court suggested in its first dismissal order, citing *Nikelly v. Stubing*, 204 Ill. App. 3d 870 (1990), this could have come in the form of additional allegations that defendants harbored personal animosity towards the decedent or that their actions were motivated by malice or some other improper or illicit purpose. Mr. Green Sr. included no such allegations. He did, however, state repeatedly in his complaint that at the time of the shooting, the troopers were acting under color of law and in the course and scope of their employment with the state. Under the first prong of the *Healy* test, Mr. Green's claims were claims against the state.

¶ 29                                b. Source of the Duty

¶ 30    The bulk of Mr. Green Sr.'s argument on appeal focuses on the second *Healy* criterion, which our supreme court has referred to as the "source of the duty" test. *Jinkins v. Lee*, 209 Ill. 2d 320, 331 (2004). Under this test,

    "[w]here the charged act of negligence arose out of the State employee's breach of a duty

- 9 -

that is imposed on him *solely* by virtue of his State employment, sovereign immunity will bar maintenance of the action in circuit court. [Citations.] Conversely, where the employee is charged with breaching a duty imposed on him *independently* of his State employment, sovereign immunity will not attach and a negligence claim may be maintained against him in circuit court." (Emphases in original.) *Currie v. Lao*, 148 Ill. 2d 151, 159 (1992).

An independent duty is understood to be "a duty imposed by the employee's status as something other than an employee." *Brandon v. Bonell*, 368 Ill. App. 3d 492, 505-06 (2006). Relying on this test, Mr. Green Sr. argues that sovereign immunity is inapplicable as to his claims against the troopers because, when they shot and killed the decedent, they breached the "duty not to commit murder," a duty that is imposed upon them independent of their status as state troopers.

¶ 31 In support of his argument, Mr. Green Sr. relies primarily on *Currie*, 148 Ill. 2d 151, which he refers to as "particularly on point," and several other cases that followed in *Currie*'s wake where our supreme court found that sovereign immunity did not bar the plaintiffs' claims based on the court's application of the source of the duty analysis (*Jinkins*, 209 Ill. 2d 320; *Loman v. Freeman*, 229 Ill. 2d 104 (2008)). In *Currie*, 148 Ill. 2d at 155-56, a plaintiff was making a legal turn in his pickup truck when a state trooper in a patrol car, driving the wrong way down a one-way road, crashed into him. The plaintiff sued the trooper for negligence, and a jury entered a verdict in the plaintiff's favor, awarding him damages. *Id.* at 157. The trooper argued that sovereign immunity barred the plaintiff's claims because he was performing official duties at the time of the collision, which meant the claims against him were really claims against the state. *Id.* Our supreme court rejected the trooper's argument, finding that the duty he was charged with breaching "did not arise as a result of his employment as a State trooper, but rather arose as a result of his status as the driver of an automobile on a public roadway." *Id.* at 161-62.

¶ 32    This holding, however, was a limited one based on facts that indicated to the court that at the time of the collision, the defendant trooper was "not performing a uniquely governmental function." *Id.* at 162-63. Specifically, the trooper was not in his usual jurisdiction at the time of the incident, there was no record of any call for assistance even though the trooper claimed that he was responding to an emergency, and the manner in which the trooper drove (at the speed limit and without flashing lights) was not suggestive of any emergency or official purpose. *Id.* These facts all supported an inference that the defendant was operating a motor vehicle like any ordinary member of the public at the time of the collision; he just happened to be in a police vehicle. As the trooper was not doing anything "uniquely related to his employment" when he crashed into the plaintiff's truck, the court concluded that his duties in that moment stemmed not from his job, but from his status as a driver on the road. *Id.* at 163. Sovereign immunity, therefore, did not apply.

¶ 33    The *Currie* court was careful to distinguish this narrow, fact-based holding from the result reached in *Campbell v. White*, 207 Ill. App. 3d 541 (1991), where the Fourth District held that an action against a state trooper involved in a car accident was barred by sovereign immunity. Our supreme court differentiated the two cases as follows:

"In [*Campbell*], the officer, while engaged in the high-speed chase of a suspect, struck the suspect's automobile, causing the suspect's death. Thus, although the officer in *Campbell* was operating a motor vehicle, he was doing so in a manner in which *only* a governmental official is authorized to act. [Citation]. The operation of the vehicle, and the duties accompanying that operation, arose solely as a result of the officer's State employment. [The defendant in *Currie*], on the other hand, was not performing a function that could not lawfully be performed by other than a governmental official. Rather, [he] was performing the nongovernmental activity of driving a motor vehicle in a routine manner on a public

- 11 -

street." *Currie*, 148 Ill. 2d at 163-64.

The allegations in Mr. Green Sr.'s complaint describe a scenario that is far closer to *Campbell* than it is to *Currie.* Like the officer engaged in a high-speed chase in *Campbell*, when the defendant troopers in this case pulled over the decedent, they were unquestionably performing a function—traffic enforcement—that could not lawfully be performed by anyone other than an agent of the state. Any "duties accompanying that operation" arose solely by virtue of their state employment.

¶ 34    Two other cases cited by Mr. Green Sr.—*Jinkins*, 209 Ill. 2d 320, and *Loman*, 229 Ill. 2d 104—are distinguishable on the same basis. In both cases, our supreme court, relying largely on the reasoning from its prior decision in *Currie*, determined that sovereign immunity provided no protection where defendants employed by the state were not performing a uniquely governmental function at the time of injury. *Jinkins*, 209 Ill. 2d at 335-336 (a doctor at a state-run mental health facility who allegedly failed to order the involuntarily commitment of a patient who subsequently committed suicide was not performing a uniquely governmental function, as there is no substantial difference in the criteria for involuntary commitment between public and private hospitals and his duties in treating the decedent derived from his professional obligations as a licensed physician, not his status as a public employee); *Loman*, 229 Ill. 2d at 119 (a veterinarian employed by a public university who performed a surgery that left a horse lame was not performing a uniquely governmental function because the source of the breached duty was not his status as a public employee, but rather the common law duty he owed to his clients and their animals as a trained veterinarian, duties and professional standards which veterinarians working in both the public and private sectors are obligated to follow.)

¶ 35    Mr. Green also cites *Bianchi v. McQueen*, 2016 IL App (2d) 150646, and *Fritz v. Johnston*, 209 Ill. 2d 302 (2004). In *Bianchi*, sovereign immunity did not apply because the plaintiffs—who

sued a special prosecutor and his staff alleging malicious prosecution, intentional infliction of emotional distress, and defamation—included in their complaint allegations detailing several specific incidents involving the fabrication of evidence and "deliberate investigative fraud." *Bianchi*, 2016 IL App (2d) 150646 ¶¶ 1, 41. The court found that these allegations, accepted as true were "certainly *** outside [the] defendants' authority as employees of the State," and were "sufficient to establish that [the] defendants acted in excess of their authority and in violation of applicable laws such that the Court of Claims does not have exclusive jurisdiction." *Id.*

¶ 36    Similarly, in *Fritz*, 209 Ill. 2d at 310, 314, our supreme court held that a public employee defendant was not protected by sovereign immunity where his alleged conduct—knowingly providing a false statement to the Illinois State Police to besmirch the integrity of a competitor for a job promotion—violated a criminal statute that he was obligated to follow independent of his status as a state employee. The "duty not to make false accusations," the court explained, "is imposed by the Illinois Criminal Code, which makes no distinction between accusations by state employees and those leveled by non-state employees." (Emphasis omitted.) *Id.*

¶ 37    Unlike the "duty not to make false accusations" at issue in *Fritz*, a duty which derives from criminal laws that apply to everyone—public and nonpublic employees alike—in this case, it is relevant that the criminal code expressly permits law enforcement officers to use force (including deadly force) in certain situations, where ordinary civilians would not be permitted to do so. See 720 ILCS 5/7-5(a) (West 2020) (A peace officer "is justified in the use of any force which he reasonably believes, based on the totality of the circumstances, to be necessary to effect the arrest and of any force which he reasonably believes, based on the totality of the circumstances, to be necessary to defend himself or another from bodily harm."). The existence of this statute also differentiates Mr. Green Sr.'s case from *Bianchi*. As the State noted in its brief when responding

to Mr. Green Sr.'s reliance on *Bianchi*, while there will never be a legal justification for a prosecutor to fabricate evidence, "there may be reasons why an officer may need to use force in the course of his duties."

¶ 38    In light of the use of force statute, the two central factual allegations of Mr. Green Sr.'s complaint—that Mr. Green Jr. was unarmed at the moment he was shot and that Trooper Ehlers shot him in the back of the head with a gun that had been found in Mr. Green Jr.'s car—accepted as true, do not necessarily establish the elements of first degree murder. Without more context, these facts are simply not enough to support an inference that this shooting was "without lawful justification," which is part of the statutory definition of first degree murder. 720 ILCS 5/9-1(a) (West 2020).

¶ 39    In sum, we are not persuaded by the cases Mr. Green Sr. cites in support of his argument that sovereign immunity does not apply because his second amended complaint adequately alleged the breach of the duty not to commit murder. *Currie* does not apply because, unlike what allegedly occurred here, the tortious conduct at issue in that case took place while the defendant was engaged in functions that the court found were not uniquely governmental in nature. *Fritz* and *Bianchi* are inapplicable because, in those cases, the specific factual allegations in the plaintiffs' complaints, accepted as true, either plainly established a violation of a criminal statute that made no distinction between public and nonpublic employees or described conduct for which there was no possible legal justification. Mr. Green Sr.'s allegations, in contrast, are too conclusory and lack the specificity required to establish illegal conduct that would take his claims outside the jurisdiction of the Court of Claims.

¶ 40                                        c. Official Functions

¶ 41    As to the third criterion from *Healy* (whether the complained-of actions involve matters

ordinarily within that employee's normal and official functions), we agree with the circuit court that it is clearly satisfied in this case and does not merit further discussion. As the circuit court stated in its initial dismissal order, "the curbing of the car for petty equipment violations and the search of the car, and actions ancillary thereto, certainly involve matters within the Troopers' normal and official functions, and those functions are a uniquely governmental function."

¶ 42    All three *Healy* criteria indicate that Mr. Green Sr.'s claims against the two troopers, as expressed in his second amended complaint, are substantively against the state such that sovereign immunity applies. Accordingly, the circuit court did not err in dismissing the claims against the two state troopers for lack of subject matter jurisdiction.

¶ 43                 B. Denial of Leave to File a Third Amended Complaint

¶ 44    Mr. Green Sr. next argues that the circuit court erred in denying him leave to file a third amended complaint. We agree.

¶ 45    As a general matter, the decision whether to allow or deny a motion for leave to amend rests within the sound discretion of the circuit court (*Kupianen v. Graham*, 107 Ill. App. 3d 373, 377 (1982)), and absent an abuse of that discretion, we will not overturn the circuit court's decision (*Sellers v. Rudert*, 395 Ill. App. 3d 1041, 1054 (2009)). However, where, as here, "we are confronted with a situation where the trial court erroneously believed that it had no discretion," we need not find an abuse of discretion to reverse. *Allen v. Kewanee Machinery & Conveyor Co.*, 23 Ill. App. 3d 158, 162-63 (1974).

¶ 46    In this case, as the State documents in its brief, there were several legitimate reasons the circuit court could have provided when it denied Mr. Green Sr.'s motion for leave to amend. Prominent among them was Mr. Green Sr.'s failure to attach to his motion a proposed third amended complaint for the court's consideration when he asked for leave to amend. By not

attaching a proposed amendment, which would illustrate to the court how exactly he sought to address the defects identified in its initial dismissal order, Mr. Green Sr. "significantly diminishe[d] [the] court's ability to analyze the appropriate factors for determining whether leave should be granted." *Sellers*, 395 Ill. App. 3d at 1054-55 (citing *Ignarski v. Norbut*, 271 Ill. App. 3d 522, 532 (1995)).

¶ 47 The State also criticizes Mr. Green for waiting until after his complaint was dismissed "with prejudice" to seek leave to amend, arguing that this delay made his motion untimely under section 2-616(a), which allows for amendments "[a]t any time *before* final judgment." (Emphasis added.) 735 ILCS 5/2-616(a) (West 2022). Mr. Green responds to this argument by pointing out that under Illinois Supreme Court Rule 273 (eff. Jan. 1, 1967), dismissals for lack of jurisdiction should be without prejudice. Accordingly, he argues, the circuit court erred when it dismissed his case "with prejudice," and the court's dismissal order should therefore not be considered a final judgment for purposes of filing a motion for leave to amend.

¶ 48 While Mr. Green Sr. is correct that a dismissal for lack of jurisdiction is not really a dismissal "with prejudice," in that it is not a decision on the merits for the purposes of *res judicata* (see *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 303 (1998)), the fact remains that he did not seek leave to amend his complaint until after the circuit court believed that it had concluded its review of this case and, even then, his motion was made without an attached proposed complaint. When Mr. Green Sr. finally did provide the court with a proposed amended complaint, it was as an attachment to his motion to reconsider the court's order denying him leave, which was after the second dismissal order. This was improper, as the purpose of a motion for reconsideration is to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of existing law. *Farley Metals, Inc. v. Barber Colman*

*Co.*, 269 Ill. App. 3d 104, 116 (1994).

¶ 49     We note that it remains unclear to us precisely when the proper time to bring this motion for leave to amend in the first instance would have been because, after granting Mr. Green Sr.'s motion to reconsider its original dismissal order, the circuit court then vacated that original dismissal order and dismissed the case a second time on very different grounds. Thus, an amended complaint that might have cured the defects noted in the first dismissal order might have been different than a complaint drafted to avoid the defects noted in the second dismissal order.

¶ 50     In any event, the circuit court mentioned neither the issue of timeliness under section 2-616(a) nor the failure to attach a proposed amended complaint when it denied Mr. Green Sr.'s motion for leave to file a third amended complaint. Instead, the sole reasoning the circuit court provided in its January 21, 2022, order denying Mr. Green Sr.'s motion was the following: "Based on the Court's finding that the Court lacks subject matter jurisdiction, the Court likewise lacks subject matter jurisdiction to grant the plaintiff's motion to amend the complaint." This justification was incorrect as a matter of law, as the circuit court retains jurisdiction to reconsider judgments and orders within 30 days of their entry. *Won v. Grant Park 2, L.L.C.*, 2013 IL App (1st) 122523, ¶ 24. This retained jurisdiction exists even in cases like this one where the circuit court concludes that it lacks subject matter jurisdiction over the case or controversy before it. A finding of no subject matter jurisdiction does not divest a court of its authority to entertain timely postjudgment motions challenging that finding.

¶ 51     Our " 'primary consideration' " in determining whether to allow amendment of pleadings is whether doing so would further the ends of justice. *Bangaly v. Baggiani*, 2014 IL App (1st) 123760, ¶ 200 (quoting *Regas v. Associated Radiologists, Ltd.*, 230 Ill. App. 3d 959, 968 (1992)). In light of the liberal policy in Illinois of allowing parties to amend their pleadings to permit them

to fully present their causes of action (*Jeffrey M. Goldberg & Associates, Ltd. v. Collins Tuttle & Co.*, 264 Ill. App. 3d 878, 885 (1994)) and considering that, in this case, the circuit court's justification for denying such an opportunity was erroneous, we agree with Mr. Green Sr. that he should be granted an opportunity to file a third amended complaint.

¶ 52    On remand, Mr. Green Sr. will have an opportunity to show how any of his claims fall outside of the exclusive jurisdiction of the Court of Claims. As he appears to recognize in the proposed third amended complaint attached to the motion to reconsider, any claim asserted directly against the State of Illinois in the circuit court is barred under the Immunity Act. Additionally, as we have made clear in this opinion, his claims against Troopers Ehlers and McCarthy, in their individual capacities, for actions that occurred during this traffic stop, are also barred to the extent that they rely on conclusory statements unsupported by specific factual allegations demonstrating conduct that falls outside the scope of sovereign immunity. If Mr. Green Sr. seeks to proceed against these state law enforcement officers in the circuit court rather than in the Court of Claims, he must allege specific, nonconclusory facts, which, accepted as true, are sufficient to establish that their alleged conduct violated a criminal statute that would apply to them in this factual context.

¶ 53    As we have said in the past, "[w]here facts of necessity are within [the] defendant's knowledge and not within [the] plaintiff's knowledge, a complaint which is as complete as the nature of the case allows is sufficient." *Yuretich v. Sole*, 259 Ill. App. 3d 311, 313 (1994); see also *Patrick Engineering, Inc.*, 2012 IL 113148, ¶ 40 (advising that, where a plaintiff does not "have the benefit of discovery tools" to expose certain necessary details, it will at least "have knowledge of what it did to learn those details, and should allege any efforts taken"). Here, based on comments made by the parties at oral argument, it appears that Mr. Green Sr.'s counsel had some pre-

discovery access to relevant information about the shooting that was not included in the record or in any iterations of the complaint. For example, Mr. Green Sr.'s counsel alluded to the existence of body-worn camera footage which documents a portion of the traffic stop and subsequent shooting. He stated that the footage showed that after the troopers recovered a gun from Mr. Green Jr.'s car, the "car then takes off and crashed," at which point one of the troopers comes around to the driver's side of the vehicle before the gun is fired. These factual allegations provide critical additional context as to what transpired. Counsel for the State also noted that Mr. Green Sr. subpoenaed and received an investigation file from the Illinois State Police about the shooting. There were also individuals in the car with Mr. Green Jr. who presumably witnessed the events leading up to the shooting and could have provided additional information to use in the complaint. When Mr. Green Sr. gets a chance to amend his complaint on remand, he can draw on all available sources of information to make his allegations as specific and non-conclusory as possible.

¶ 54                                    IV. CONCLUSION

¶ 55    For the reasons stated, we affirm the circuit court's dismissal of Mr. Green Sr.'s second amended complaint, but we reverse the circuit court's denial of Mr. Green Sr.'s motion for leave to file a third amended complaint.

¶ 56    Affirmed in part and reversed in part; cause remanded.

***Green v. State*, 2023 IL App (1st) 220245**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2020-L-010860; the Hon. Gerald Cleary, Judge, presiding. |
| **Attorneys for Appellant:** | Brandon Brown, of Brown Law Ltd., and Andre M. Grant, both of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Kaitlyn N. Chenevert, Assistant Attorney General, of counsel), for appellee. |